## UNITED STATES v. MARTINDALE.

(District Court, D. Kansas, First Division. October 12, 1903.)

No. 3,575.

1. BANKS AND BANKING—MISAPPLICATION OF FUNDS OF NATIONAL BANK—ELEMENTS OF OFFENSE.

Funds of a national bank are not misapplied by an officer for the purpose of constituting a criminal offense, under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], merely by the drawing of a draft on a fund on deposit in another bank, or by entering a credit to a depositor on the books; but it is necessary that the fund should have been actually withdrawn or converted in some form, so that it is lost to the bank, and such loss must be averred in an indictment for the offense, and the facts set out showing it to have been unlawful.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, § 964.]

2. SAME—INDICTMENT—DESCRIPTION OF OFFENSE.

An averment in an indictment, under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging that defendants, as director and cashier of a national bank, by means of a draft drawn by them or by other stated means misapplied the moneys, funds, and credits "of said association without

the knowledge and consent thereof," is not equivalent to an averment that the act was done without the knowledge and consent of the directors, as required by the statute, and is insufficient.

3. SAME—MISJOINDER OF SEPARATE OFFENSES.

Where an officer of a national bank is charged in an indictment with the fraudulent misapplication of its funds in the payment of several and distinct notes, each payment constitutes a separate misapplication, and must be charged in a separate count.

4. SAME—INDEFINITENESS.

A count in an indictment, under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging that defendant, as a director of a national bank, between certain given dates abstracted and misapplied a stated sum of the moneys, funds, and credits of the bank, without further specification, is insufficient, as too general and indefinite.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, § 973.]

On Motion to Quash Indictment.

John S. Dean, U. S. Atty.

C. B. Graves, L. B. Kellogg, and Frank Hagerman, for defendant.

PHILIPS, District Judge. The defendant, William Martindale, with one D. M. Davis, who has never been arrested, is indicted for alleged violations of the provisions of section 5209 of the national banking laws [U. S. Comp. St. 1901, p. 3497] of the United States. He was vice president of the First National Bank of Emporia, Kan. There are 19 counts in the indictment. The defendant Martindale has filed a motion to quash all the counts of the indictment.

First Count.

The specifications in the first count are much involved, indefinite, and obscure; so much so, that after much study of its phraseology it is difficult for the court to comprehend it without resorting to implication—an infirmity in criminal pleading that should never be tolerated. Reduced to its substantive effect, it charges that the defendant, Martindale, was vice president and director of said bank. That on or about the 16th day of April, 1899, he and said Davis, who was then the cashier of said bank, misapplied the moneys, funds, and credits "of said association without the knowledge and consent thereof," with the intent then and there to injure and defraud the association, and with intent to convert the same to the use and benefit of the Salina Gas & Electric Light Company, and William Martindale, D. M. Davis, Martindale & Cross, and C. S. Cross, in the sum of $5,150 of the moneys, funds, and credits of said association, in that said William Martindale and D. M. Davis did issue and cause to be issued a certain draft of the First National Bank of Emporia, Kan., drawn on the First National Bank of New York City, payable to the order of G. A. Fernald & Co., in the amount and value of $5,150, of date April 16, 1896. It is then alleged that said draft was drawn for the purpose of paying a certain promissory note, dated October 11, 1895, due April 14, 1896, signed by the Salina Gas & Electric Light Company, payable to the order of Martindale & Cross, and by Martindale & Cross and William Mar-

tindale and C. S. Cross indorsed to one Piper, cashier, and by him indorsed for collection and remittance to Geo. A. Fernald & Co., which said note was payable at the office of the Central Loan & Debenture Co., Kansas City, Mo. That said draft was afterwards, on the 21st day of April, 1896, presented to and paid by the First National Bank of New York City out of the funds, moneys, and credits of the said First National Bank of Emporia, Kan., then on deposit in the First National Bank of New York City. It is then alleged:

"That at the time of the issuance of the draft aforesaid by the said William Martindale and D. M. Davis, vice president and director and cashier, respectively, as aforesaid, on to wit, the 16th day of April, 1896, there was nothing due or owing by the First National Bank of Emporia, Kan., or out of the funds, moneys, and credits thereof, to the said Salina Gas & Electric Light Company, Martindale & Cross, or William Martindale, or C. S. Cross, or D. M. Davis, and the said association had received no consideration for the same."

—as they, the said named parties, then and there well knew, and said draft was issued without said banking association receiving any consideration for the same, and was used for the benefit of the said Salina Gas & Electric Light Company, Martindale & Cross, William Martindale, C. S. Cross, and D. M. Davis, and certain other persons than the First National Bank of Emporia, Kan., to the grand jurors unknown, with intent to injure and defraud said bank.

It is difficult to escape the impression, after a careful reading of this count, that it was drawn upon the theory that the offense of misapplication was completed at the time the draft was drawn on the New York bank. It has been expressly ruled by the Court of Appeals of this circuit that to complete the misapplication of the funds of a bank it is necessary that the fund should be withdrawn from the possession or control of the bank, or a conversion thereof in some form should occur, so that the bank loses the same. Dow et al. v. United States, 82 Fed. 904, 27 C. C. A. 140, 49 U. S. App. 605; Mohrenstecher et al. v. Westervelt, 87 Fed. 157, 30 C. C. A. 584, 57 U. S. App. 618. This is so, for the obvious reason that, in respect of a check drawn on a bank, although the drawer may not at the time have any fund on deposit with which to pay it, non constat, he may have when the check is presented for payment; and in respect of the draft issued by the Emporia bank on the New York bank, the drawer might at any time before presentation and payment thereof withdraw it or stop payment.

It is suggested by the District Attorney that this ruling has no application to the count in question for the reason that the draft was drawn payable to a third party (Geo. A. Fernald & Co.), and, eo instanti, the bank thereby became obligated therefor to such third party. This, undoubtedly, is a correct proposition of law as applied to a proper state of facts. If the draft had been placed to the credit of Geo. A. Fernald & Co. in the Emporia bank, it would at once inure to the depositor's benefit, and the funds of the bank, by this credit, would thereby have been lessened. But the draft in question having been drawn on the New York bank at the city of New York, it was the duty of the payee to duly present to the drawee at its place of business the draft for payment, "without unreasonable delay, or the drawer or indorsers will be discharged; for they have an interest in having the

bill accepted immediately, in order to shorten the time of payment, and thus to put a limit to the period of their liability, and also to enable them to protect themselves by other means before it is too late, if the bill is not accepted and paid within the time originally contemplated by them." 4 Am. & Eng. Ency. of Law (2d Ed.) 350. It therefore follows that no loss could have been sustained by the Emporia bank until the draft was presented and paid in New York and charged up to the Emporia bank. It is not even affirmatively alleged in this count that the money thus paid by the New York bank was lost to the Emporia bank. This important fact is left to mere inference, which is vicious pleading in indictments.

Be this as it may, there is a fatal objection to this count in that it does not allege that the transaction in question, out of which the draft was issued, was without the knowledge and approval of the board of directors or the discount committee of the bank. The allegation of the indictment is that it was a misapplication "of the moneys, funds, and credits of said association, without the knowledge and consent thereof." It is to be spelled out of the loose recitations of the indictment that said note of the Salina Gas & Electric Light Company, indorsed by the defendant and others, was discounted at the bank as the basis for issuing the draft to Fernald & Co. It has been the understanding of the law of pleading in such indictments, ever since the ruling of the Supreme Court in United States v. Britton, 108 U. S. 193–197, 2 Sup. Ct. 526, 27 L. Ed. 701, that it must be alleged that the note, placed in the bank as the basis of the fund drawn out by the check or draft, should have been discounted or received without the knowledge or approval of the board of directors or governing discount committee. The court said:

"One branch of the business of a banking association is the discounting and negotiating of promissory notes, and this is to be done by its board of directors or duly authorized officers or agents. Section 5136, Rev. St. [U. S. Comp. St. 1901, p. 3455]. There is no provision of the statute which forbids the discounting of a note not well secured, or both the maker and indorser of which are insolvent. It is within the discretion of the directors, or the officers or agents lawfully appointed by them, to discount such a note if they see fit, and it might, under certain circumstances, tend to the advantage of the association. This count does not charge that the note of the defendant was discounted at his instance, without the authority of the board of directors. * * * It is not alleged that the discount was procured by any fraudulent means. From all that appears, the board of directors, or the officer or agent by whom the note was discounted, may, upon knowledge of all the facts, in the utmost good faith and for the advantage of the association, have decided to discount the note. The discount may have turned out to be a benefit to the association, for there is no averment that the note was not paid at maturity, or that the association suffered any loss by reason of its discount. But whether the discounting of the note was an advantage to the association or not, and whether the note was paid or not, is immaterial. If an officer of a banking association, being insolvent, submits his own note, with an insolvent indorser as security, to the board of directors for discount, and they, knowing the facts, order it to be discounted, it would approach the verge of absurdity to say that the use by the officer of the proceeds of the discount for his own purposes, would be a willful misapplication of the funds of the bank, and subject him to a criminal prosecution."

This proposition evidently was present to the mind of Judge Taft in his charge in United States v. Youtsey (C. C.) 91 Fed. 868, 869.

This is a reasonable ruling. As such negotiations and credits are committed by the national banking law to the board of directors, or the constituted discount committee, if the transaction undergoes their observation and approval, the vice president, who obtains the benefit of the credit, is not culpable unless he procures the approval by some fraud or deception; and therefore the indictment should either negative any knowledge or approval thereof by said directors or committee, or aver some fraudulent imposition practiced by the defendant in securing its approval.

The District Attorney relies upon the case of McKnight v. United States, 115 Fed. 972–986, 54 C. C. A. 358, for the proposition:

"That where the circumstances proven are such that the consent of the board of directors would constitute no offense, it is unnecessary to aver the want of such consent; that under the circumstances as alleged in this count the consent of the board of directors would not have relieved the transaction of its criminal character; that it is only in cases where the consent of the board of directors would relieve the transaction of its otherwise criminal character that it would be necessary to allege the want of consent," etc.

The case under consideration there by the court was a charge of embezzlement, and it is to be observed that the indictment in that case (see page 986, of 115 Fed., page 372, of 54 C. C. A.) "averred that the transactions of McKnight were without the consent of the board of directors or of the discount committee." All that the learned judge who wrote the opinion meant to say was that, where the proof on the trial disclosed a state of flagrant criminality on the part of the bank officers in loaning the funds of the bank to irresponsible parties, it would, without more, raise the presumption that it was done without the approval of the board of directors or governing committee, so as to devolve the burden of proof on the defendant to show that his action was authorized by the directors or committee; and further, that notwithstanding it should be shown that the act of the offending officer was approbated by the directory or committee, if it were an unlawful act, prohibited by law, connived at by the directors, proof of their approval could not avail the defendant. The opinion does not hold that an indictment is good which simply charges that an insolvent note, placed in the bank as the basis of a discount, the fruit of which is appropriated to the private use of the bank officer, without more, or that an averment is sufficient which simply charges that the act was done without the knowledge or consent of the association.

The pleader in this case recognized the obligation, in drawing the indictment, to charge that the transaction had "passed muster" without the proper authority, and he therefore alleged that it was done without the knowledge of the association. The term "association" is generic. It may comprehend the whole body of men, like the stockholders, who unite in forming the body politic of a banking institution; in which sense the allegation of the indictment might be true when the board of directors or the governing committee had not passed upon the transaction. As it is a recognized usage and fact that the matter of daily discounts and transactions of this character in a national bank are conducted by and through discount committees, the indictment, as applied to the instance of this count, should negative the knowledge and

approval of the recognized body for passing on such transactions. In criminal proceedings the rule strictissimi juris obtains. Nothing can be left to inference or implication.

There are other objections made on the argument and in the brief of defendant's counsel to this count, but, as the objections already discussed are fatal, it is not deemed necessary to go further in this discussion.

### Second Count.

This count is similar to the first, except in the date and amount of the draft drawn, which is for $10,000, issued February 20, 1897, on a New York bank, payable to the order of the Investors' Agency Company, and paid in New York on February 25, 1897. It is subject to the same objections.

### Third Count.

The charge in this count is similar to that contained in the first count in respect of a draft issued on October 20, 1897, for $5,000 on a Kansas City, Mo., bank, paid in Kansas City October 22, 1897. It is subject to the same objections.

### Fourth Count.

This count charges misapplication of the funds of the bank, growing out of a draft drawn by the Excelsior Water Mill Company for $5,000 on the defendant, in favor of the Burlington National Bank, with the allegation that said draft was paid out of the moneys, funds, and credits of the said Emporia bank to the Burlington bank by the defendant and said Davis by making and causing to be made a deposit slip in the words and figures as follows: "First National Bank of Emporia, Kansas. Deposited for account of Burlington Nat. 7-17-97. $5,000.00. W. Martindale," who made and caused to be made by one ————, whose name is to the grand jurors unknown, a clerk in said bank, in a book used by said association, and designated as "Cash Book X," a certain entry to the credit of Burlington National Bank: "July 17, 1897. Burlington Nat. Martindale, $5,000." That afterwards said Burlington National Bank drew from the funds of said First National Bank the sum of $5,000 so placed to its credit, as aforesaid; the defendant and said Davis knowing that said Excelsior Water Mill Company and the defendant had no moneys, funds, or credits in said First National Bank to pay said draft, and that said association received no consideration for the same, and that the same was without its knowledge and consent, the defendant and said Davis then and there fraudulently devising that the said Burlington National Bank, the Excelsior Water Mill Company, and the defendant should obtain possession of said $5,000 for the use and benefit of said Excelsior Water Mill Company and the defendant, whereby the said funds and credits were then and there unlawfully misapplied and converted to the use of the said Excelsior Water Mill Company and of the defendant. This count is subject to the objection discussed respecting the first count, that the transaction is not alleged to have been without the knowledge or approval of the board of directors or governing committee.

It is furthermore apparent from a careful reading of this count that it proceeds upon the theory that the misapplication was in entering a credit to the Burlington National Bank of the sum of $5,000, the same as if it had been deposited by the defendant in cash. The entry was not the misapplication of the fund, but the wrong would consist in withdrawing the money from the bank. The only allegation of the indictment in this respect is, "that afterwards said Burlington National Bank drew from the funds of said First National Bank the sum of five thousand dollars so placed to its credit." There is no allegation as to when this was done, or that there was any wrong or fraud in withdrawing the money; nor is there any negation that any additional consideration may have been given by the Burlington Bank at that time. Neither is there any allegation of any loss of this money to the bank. The only statement is that at some time after July 17, 1897, the Burlington Bank drew the sum of $5,000. Whether or not this was ever lost or paid, or sufficient security therefor given, is nowhere alleged. As shown in the previous discussion, it is essential to show a loss. As said in Britton's Case, supra, the discount may have turned out to be a benefit to the association, for there is no averment that the note was not paid at maturity, or that the association suffered any loss by reason of this discount. As heretofore stated, as held in the Dow Case, a mere entry in the books of the association did not constitute a misapplication, but as the crime was committed and consummated only when the money was drawn from the bank, it must follow that the indictment must show that the money got out of the bank in some way. As stated by the court in Britton's Case, 108 U. S. 193–197, 2 Sup. Ct. 526, 27 L. Ed. 701, the terms "willfully misapplied" have no marked, technical meaning. "They do not, therefore, of themselves, fully and clearly set forth every element of the offense charged. It would not be sufficient simply to aver that the defendant willfully misapplied the funds of the association. This is well settled by the authorities we have already cited. There must be averments to show how the application was made, and that it was an unlawful one." See, also, United States v. Northway, 120 U. S. 327–332, 7 Sup. Ct. 580, 30 L. Ed. 664; Batchelor v. United States, 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478; United States v. Eno (C. C.) 56 Fed. 218, 219, 220.

### Fifth Count.

This count charged misapplication, in that on July 10, 1897, there was deposited in said Emporia bank to the credit of said defendant the sum of $5,000 by entry of such deposit in his account, "which said sum was afterwards drawn by and paid to said William Martindale by said banking association," without any averment as to when it was so drawn or paid, or the manner thereof. This count is subject to the same objections discussed in respect of the first count, with the further objection that there is no averment to show how the application was made, and that it was an unlawful one. Neither is there any sufficient showing of any loss to the bank by reason of the transaction. The averments respecting lack of consideration and fraudulent intent of the defendant have reference to the entries on the books, which seems to have been the gist of the offense in the mind of the pleader.

## Sixth Count.

As the District Attorney at the hearing announced that he would enter a nolle as to this count, it is useless to take the time of the court in discussing its validity or invalidity, as under such announcement it is the duty of the court to direct a nolle to be entered.

## Seventh Count.

This count charges a misapplication, in that there was deposited to the defendant's credit on April 1, 1898, the sum of $5,000. It is quite evident from reading the specifications of this count that it was in the mind of the pleader only to charge the completion of the misapplication by the act of entry in the books of the bank, and not in the withdrawing of the funds. There is no showing when or under what circumstances the money was drawn from the bank, nor is any loss directly alleged to have occurred. The count is also subject to the objection discussed in respect of the first count of the indictment for a failure to allege that the transaction was without the knowledge or approval of the board of directors or discount committee.

## Eighth Count.

The misapplication alleged in this count consists of a deposit of $6,000 in the Emporia bank to the defendant's credit on August 1, 1898, the charge being that a deposit slip was made on that day crediting Martindale with $6,000, "which said sum was afterwards drawn by and paid to William Martindale by said association." No allegation is made that the transaction was without the knowledge or approbation of the board of directors or governing committee. The count proceeds, evidently, upon the theory that the misapplication consisted in the entry in the account of the defendant, and not in drawing out the money from the bank. Neither does it show how, when, nor the circumstances under which, the money was drawn from the bank, nor does it appear that the money was lost to the bank. It is made apparent to the court that the government does not rely upon a conviction under this count, inasmuch as the District Attorney has subsequently indicted the defendant in several counts, which at the argument was stated by the District Attorney to grow out of and to cover this $6,000 transaction, in which second indictment the palpable infirmities of this eighth count are sought to be corrected.

## Ninth Count.

As it was stated by the District Attorney at the argument that a nolle would be entered as to this count, it need not be considered.

## Tenth Count.

The charge in this count is based upon a deposit in said Emporia bank to the credit of Martindale & Cross August 2, 1897, of $10,000, and the misapplication grew out of an entry of a deposit slip, as heretofore discussed. The averment is, "which said sum was afterwards drawn by and paid to Martindale & Cross and William Martindale," without any showing as to how, when, or under what circumstances

the money was drawn or paid, showing that it was drawn upon the theory that the misapplication of the funds of the bank was accomplished in the entering in the account of Martindale, and not in drawing out the money from the bank; nor is it directly averred that any loss occurred to the bank, nor that the transaction was without the knowledge or approval of the board of directors or discount committee.

### Eleventh Count.

The charge of misapplication of the funds of the bank in this count is predicated of a payment September 27, 1897, of a note of Leibfried, indorsed by Martindale & Cross and Martindale, which payment is alleged to have been made out of the moneys of the Emporia bank then on deposit with the First National Bank of New York City, by which bank it was there paid. This count is subject to the same objections discussed in the first count of the indictment.

### Twelfth Count.

As the District Attorney at the hearing announced that he would enter a nolle as to this count, its discussion is unnecessary.

### Thirteenth Count.

As the District Attorney at the argument announced that he would enter a nolle as to this count, its consideration by the court is unnecessary.

### Fourteenth Count.

This count is subject to the same objections discussed in respect of the first count.

### Fifteenth Count.

This count is subject to the same objections heretofore discussed.

### Sixteenth Count.

This count is subject to the same objections heretofore discussed. To this count, as also to other counts of the indictment, counsel for defendant makes the further objection that the indictment, in effect, charges three acts of misapplication in one count, for the reason that the sum drawn from the bank was applied to the payment of three separate notes; and, as the misapplication of the funds of the bank was only completed when the money was paid, and payment was made of three separate notes, they were separate, distinct misapplications, and it was error to join them in the same count. If the misapplication was consummated only when the money was applied and used, the acts of misapplication were separate and distinct, and it would follow that this objection is well taken.

### Seventeenth Count.

This count charges the misapplication on November 27, 1898, of a note of the Salina Gas & Electric Light Company of $1,768.17. There is no averment that the transaction was without the knowledge or approbation of the board of directors or governing committee, and there is nothing alleged in this count showing any loss to the bank on account

of this transaction. The pleader seems to have proceeded upon the idea that it was wholly unnecessary to charge that any money was paid on account of this transaction, and contented himself with predicating the offense on the mere entry to the credit of the defendant.

### Eighteenth Count.

As the District Attorney at the argument announced that he would enter a nolle as to this count, its discussion is omitted for the reasons heretofore stated.

### Nineteenth Count.

This count alleges, in general and comprehensive terms, that between the 16th day of April, 1896, and the 16th day of November, 1898, the defendant abstracted and misapplied $150,000 of the moneys, funds, and credits of the bank. As suggested by the court at the argument, this count might properly be termed an omnium gatherum, a summing up in one general, broad, sweeping charge the aggregate of the funds which the defendant might be supposed to have wrongfully misapplied or taken from the bank. No man should be put to trial upon such a wholesale charge without specifications or particularization to indicate to him, definitely, what is intended to be proved under such charge. Such pleading in an indictment is decisively disapproved of by the Supreme Court in Batchelor v. United States, 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478.

It results that the motion to quash the counts of the indictment discussed is sustained, and that an order will be made on suggestion of the District Attorney, directing a nolle as to the sixth, ninth, twelfth, thirteenth, and eighteenth counts of the indictment.