## BARTHOLOMEW v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1910.)

No. 1,990.

1. INDICTMENT AND INFORMATION (§ 203*)—PARTLY ERRONEOUS SENTENCE—SENTENCE ON DIFFERENT COUNTS.

Where there is a general verdict of guilty on an indictment containing several counts, the fact that some of the counts are bad does not vitiate a sentence of imprisonment based on a good count, although a separate sentence for the same term is imposed on each count, when it is further provided that the terms shall run concurrently.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 2098–2101; Dec. Dig. § 203.*]

2. INDICTMENT AND INFORMATION (§ 99*)—REFERENCE FROM ONE COUNT TO ANOTHER.

A count in an indictment under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), for using the mails to carry out a scheme to defraud, is not insufficient because it refers to a prior count for a statement of the scheme to defraud, where the reference is adequate to the making up of a sufficient accusation.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 270, 270½; Dec. Dig. § 99.*]

3. POST OFFICE (§ 48*)—USE OF MAILS TO DEFRAUD—INDICTMENT.

An indictment under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), for using the mails in the execution of a scheme to defraud, considered, and held sufficient.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 48.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 86.]

4. CRIMINAL LAW (§ 991*)—SENTENCE—CONFORMITY TO STATUTE.

A sentence on conviction under a statute, which provides that the punishment for its violation shall be by "fine and imprisonment," is not invalid because imprisonment only is imposed, not exceeding the term authorized.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 991.*]

In Error to the District Court of the United States for the Northern District of Ohio.

Ellis Bartholomew was convicted of a criminal offense, and brings error. Affirmed.

Horace Ward, for plaintiff in error.

Wm. L. Day, for the United States.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

SEVERENS, Circuit Judge. The plaintiff in error, whom we will style the "defendant," was convicted in the District Court upon an indictment charging him with violating the provisions of section 5480 of the Revised Statutes (U. S. Comp. St. 1901, p. 3696), concerning the use of the postal establishment of the United States for the promotions of schemes to defraud. The offense charged was that, having formed a scheme to defraud the Bankers' Money Order Association, a corpora-

tion doing business at New York, which scheme involved the use of the postal service of the United States, the defendant posted three certain letters at Galion, Ohio, addressed to the said money order association at New York.

There were three counts in the indictment. The first count charged that the defendant had formed the scheme on January 26, 1907, and posted the letter therein described on January 26, 1906, and the letter itself bears this last date, thus presenting an anachronism which is criticised by his counsel, who claims that the charge is of an impossibility. The scheme to defraud is thus set out:

It is first alleged in this count that the scheme to defraud was to be effected by the said Ellis Bartholomew opening and carrying on correspondence and communication with the said Bankers' Money Order Association, etc., by means of and through the post office establishment of the United States, "so devising and intending to devise said scheme to defraud by means of the post office establishment of the United States, the use of said post office establishment being a part of said scheme to defraud," and then proceeds as follows:

"The said Bankers' Money Order Association, a corporation, as aforesaid, was then a corporation, with its said place of business in the city of New York, engaged in the business of issuing and putting forth money orders which it issued through banks throughout the United States, the said money orders to be later redeemed by said association at its said office in New York, the said banks so issuing said money orders acting as agents of said association in the issuing and putting forth of said money orders; it being a part of the business plan of said Bankers' Money Order Association to supply to genuine and reputable banks and bankers throughout the United States forms of said money orders, the same to be validated at time of sale and issue by the signature of the banker or an officer of the bank of issue, the said banks and bankers becoming agents of said Bankers' Money Order Association under an agreement to remit, immediately after sale, to said Bankers' Money Order Association, money of the amount of orders so sold and issued, and it being a part also of the business of said association that money orders so issued to customers of said banks would later be redeemed by said association; said forms to be so furnished to banks and bankers as aforesaid, by said association without any money or other tangible security being given to said association guaranteeing the proper use of said blanks and the remittance of funds received from sale of money orders, the said association relying entirely on the business integrity of banks and bankers with whom agencies were established and to whom forms were furnished; and the said Ellis Bartholomew, then and there well knowing the plan of the said business of said Bankers' Money Order Association, planned and intended by his said scheme and artifice to defraud to obtain possession of a number of blank forms of the said Bankers' Money Order Association, used in the issuing of said money orders, and so having obtained said blank forms, he further planned and intended that he would use the same and issue them under the name of said pretended bank, the said American Exchange Bank of Galion, and cause said orders to appear as if they had been issued by a real and bona fide bank acting as an agent of said Bankers' Money Order Association, and the said Ellis Bartholomew further intended and planned that in issuing said money orders he would issue them for his own personal use and benefit, that is, he would issue them in the name of and to personal creditors of his own in payment of his personal obligations and also to personal agents of his own to the end that said agents might get said money orders cashed at various banks and there secure money thereon in an amount equal to each of said money orders, for the use and benefit of said Ellis Bartholomew; it being the plan of the said Ellis Bartholomew that he would so obtain said blank forms from said association by pretending that he would establish a bona fide bank at the city of Galion,

Ohio, to be known as the American Exchange Bank, and by pretending that he was a bona fide agent and officer of said bank; he, the said Ellis Bartholomew, further intending never to remit to the said Bankers' Money Order Association, as said orders should be issued, an amount of money representing the amounts and values of said money orders, respectively, so to be issued under the name of said American Exchange Bank, at Galion, aforesaid, or approximating thereto, but intending to defraud the said Bankers' Money Order Association out of substantially the whole amount for which orders should be issued by the so-called American Exchange Bank of Galion, Ohio, aforesaid; the said scheme and artifice to defraud, so devised as aforesaid, being false and fraudulent in the following particulars:

"That the said Ellis Bartholomew did not intend to establish or to have at Galion, Ohio, any bank known as the American Exchange Bank or any bona fide bank known by any other name; that, in fact, there was no such bank at Galion, nor has there been any such bank at Galion doing a banking business; that said Ellis Bartholomew did not intend to become, and in fact, did not become, a real and bona fide banker or bank official at Galion; that prior to the dates named herein the said Ellis Bartholomew had been connected with an institution known as the American Exchange Bank at Pleasant Hill, Ohio, which said institution had been doing a banking business and had done business with and for the said Bankers' Money Order Association, acting as an agent for said association, in the selling and issuing of its money orders, and had obtained credit with said association, and the said Ellis Bartholomew relying upon said credit, so obtained, represented to said Bankers' Money Order Association that the said pretended Bank of Galion to be known as the American Exchange Bank, would be a branch of the American Exchange Bank at Pleasant Hill, Ohio, aforesaid, causing the officers and agents of said Association to rely upon said representations so made, and to furnish to said Ellis Bartholomew and to said pretended bank at Galion a large number of its blank forms with authority to issue the same; that said Ellis Bartholomew so obtaining said money order blanks in the manner aforesaid, did not intend to sell and issue the same (according to the plan of said Bankers' Money Order Association, as above set forth) to customers who might want the same in their business, but intended to issue the same for his own use and benefit for the purpose of having the same cashed to obtain money for himself and to pay obligations of his own, and thereby convert to his own use the credit and money of said Bankers' Money Order Association, and thereby to defraud said association of the amount of said orders so to be issued—all of which he, the said Ellis Bartholomew, then and there well knew."

The second count charged that the defendant had on February 5, 1907, formed a scheme to defraud—"that is to say, the same scheme and artifice that is set forth and described in the first count of this indictment, to which said first count for said description reference is hereby made, the same as if herein fully rewritten"—and charged that he, on that day, posted at Galion a letter of the same date which is set forth, and appears to be a letter addressed to the same money order association and signed by the defendant.

The third count alleges that having before the 9th day of February, 1907, formed the same scheme to defraud, "as fully described and set forth in the first count of this indictment, to which said first count for said description reference is hereby made, the same as if herein fully rewritten," the defendant posted at Galion another letter of that date, which is set out, addressed to the said money order association and signed by "C. L. Snider, Cashier."

With respect to the defect in the first count, it is contended that, inasmuch as the evidence given at the trial is not incorporated in a bill of exceptions, the court may presume that the facts might have shown that what appears in the indictment to have been impossible was ex-

plained, and one suggestion is that the date, January 26, 1906, was a clerical mistake owing to a common habit of forgetfulness that a new year has come in; and that a person reading the indictment would suppose that this had happened to the defendant in writing the letter, and that the district attorney in preparing the indictment had overlooked the mistake. All this may well be, but these circumstances would hardly excuse a faulty indictment. We are not, however, required to determine whether this count is fatally bad for the reason stated, if the second and third counts, or either of them, are good. This is the general rule. Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966; Hardesty v. United States, 168 Fed. 25, 93 C. C. A. 417, the latter being a recent decision of this court. The practice is supported by the presumption after judgment that, when some of the counts are good and some are bad, the court rested its sentence on the good counts, "unless," said Judge Lurton in the Hardesty Case, "something to the contrary appears upon the record." And something does appear in this case to repel the presumption. It is that the court awarded a separate sentence on each of the three counts, of imprisonment for the period of eighteen months. But the terms of imprisonment were to be "concurrent, and not cumulative." The result to the defendant was the same as if a sentence on the first count had not been imposed, or as if a verdict of not guilty had been rendered on that count. There is nothing therefore of which he can complain. It was so held by the Eighth Circuit Court of Appeals in Haynes v. United States, 101 Fed. 817, 42 C. C. A. 34, and in Tubbs v. United States, 105 Fed. 59, 44 C. C. A. 357, in both of which cases the sentences on the good and bad counts were to run concurrently.

The defendant moved in arrest of judgment, but the motion was denied. The grounds on which it was urged were the same as are now relied upon for reversal, namely, the insufficiency of the indictment.

The objections to the second and third counts arise from the fact that they each of them fail to embody in themselves a statement of the facts essential to constitute an offense. This is done by reference to the first count for the statement of the scheme to defraud. While this, as has sometimes been said, is a dangerous practice, because, unless care is taken, the reference may be insufficient to make a complete statement of the offense intended to be charged, yet it has been recognized as not objectionable when the reference is adequate to the making up of a sufficient accusation. Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097. The description of the scheme to defraud in the first count (and it is only to that part of the count to which the reference is made in the second and third) is quite sufficient to show that a fraud was intended, and that it involved the intended use of the postal service; and when brought in by the reference we see no reason to doubt that the second and third counts were sufficient and valid.

In the case of Stokes v. United States, 157 U. S. 187, 188, 189, 15 Sup. Ct. 617, 618 (39 L. Ed. 667), it was said that these three things must be charged and proven in order to convict the respondent:

"(1) That the persons charged must have devised a scheme or artifice to defraud. (2) That they must have intended to effect this scheme by opening

or intending to open correspondence with some other persons through the post office establishment, or by inciting such other persons to open communication with them. (3) And that in carrying out such schemes such person must have either deposited a letter or packet in the post office, or taken or secured one therefrom."

In the first count of the indictment it is alleged that the scheme was to be effected by means of communication through the post office; "the said use of said post office establishment being a part of said scheme and artifice to defraud." Taken in connection with the other excerpt from the first count above quoted and the other allegations contained in the second and third counts, they fulfilled all the requirements of the statute.

No other questions than those which concern the sufficiency of the indictment are presented. The evidence was not objected to, nor was the instruction given to the jury.

One other supposed error is relied upon, which is that the court did not impose a fine in addition to the imprisonment; and counsel point to the letter of the statute which reads that the punishment shall be by fine and imprisonment. We think it clear from the context that "and" was used in the sense of "or." But, if not, the defendant is not harmed by this omission in the punishment imposed. An adherence to the letter of the statute as the defendant claims should have been done would only add to the penalty, and his complaint in that regard is absurd.

Finding no reason for reversal, the judgment must be affirmed.