## NORTON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1913.)

No. 3,856.

**1. CRIMINAL LAW (§ 620*)—TRIAL—INDICTMENTS—CONSOLIDATION.**

Where indictments and all of the counts thereof charged accused as president of a specified national bank with acts of the same character and degree of offense, constituting an alleged violation of the national banking act, an order consolidating the indictments for trial and the trial of the same as one case was authorized by Rev. St. § 1024 (U. S. Comp. St. 1901, p. 720).

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1376; Dec. Dig. § 620.*

Consolidation of and trial of indictments together, see note to Dolan v. United States, 69 C. C. A. 287.]

**2. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFICERS—OFFENSES—MISAPPROPRIATION—INDICTMENT.**

A count in an indictment against the president of a national bank charged him with misappropriating the property of the bank, to wit, a draft drawn by H. on a specified trust company of the value of $27,125. *Held* that, since the test of the offense is whether the misappropriation was made by accused with intent to injure the bank, the count was not defective for failure to charge that the bank sustained a loss by the transaction.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 970-976; Dec. Dig. § 257.*]

**3. INDICTMENT AND INFORMATION (§ 125*)—DUPLICITY.**

Where a count in an indictment against the president of a national bank charged misappropriation of the property of the bank, to wit, a specified draft of the value of $27,125, it was not rendered duplicitous because when the draft was drawn there was substituted in its place three separate notes aggregating the same amount, alleged to be fictitious and worthless, on the theory that because the notes were used as substitutes for the draft three offenses were committed.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

**4. INDICTMENT AND INFORMATION (§ 125*)—BANK OFFICERS—DUPLICITY.**

A count in an indictment against a national bank president charged misapplication of the funds by means of moneys and credits withdrawn in the form of cash exchange in the sum and value of $9,000, by means of a check drawn by the B. State Bank on the national bank in the sum of $9,000, the state bank having no credit with the national bank, which gave therefor four drafts payable to the customers of the state bank, one for $3,000 and three for $2,000 each. *Held*, that the misapplication charged was the payment of the draft for $9,000 by means of the national bank's drafts and not the ultimate payment of the latter drafts; and hence the count was not duplicitous.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

**5. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFICERS—OFFENSES—FALSE ENTRIES.**

An indictment against a national bank president charged the making of a false entry in the ledger of the bank by debiting the account of the F. Bank with $25,000. It further charged that, by such transaction, the account of the F. Bank was reduced by such amount. *Held*, that such indictment was not demurrable in that an entry of $25,000 on the debit

side of the account did not indicate that that amount had been received by the national bank as alleged, since, if the sum had' been received, the entry would have been in the credit column, for as the sum was taken from the F. Bank's credit, it constituted a false entry unless it was paid out on a check or draft of the F. Bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 970–976; Dec. Dig. § 257.*]

6. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFENSES OF OFFICERS —FALSE ENTRIES.

In a prosecution of a national bank president for making a false entry in the bank's books relative to the alleged withdrawal of $25,000, charged against the account of another bank, evidence *held* to justify the jury in finding that the entry was false and that it had not been authorized by the president of the bank against the account of which the amount was charged.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 970–976; Dec. Dig. § 257.*]

7. CRIMINAL LAW (§ 558*)—WEIGHT OF EVIDENCE—DUTY TO CREDIT.

The rule that positive, uncontradicted testimony as to a particular fact should control the decision does not apply if the testimony is inherently improbable or the witness is contradicted by physical facts or omissions, or his manner of testifying raises doubts as to his sincerity.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1250; Dec. Dig. § 558.*]

8. BANKS AND BANKING (§ 256*)—NATIONAL BANKS—FUNDS—MISAPPROPRIATION—LOSS.

Where a national bank president misappropriated funds of the bank, the criminal character of the transactions was to be determined from the facts existing when they occurred, and if they were then criminal they did not lose their criminal character by the fact that he subsequently made good to the bank the amount so misappropriated.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–964, 967; Dec. Dig. § 256.*]

9. CRIMINAL LAW (§ 1177*)—CONVICTION—SENTENCE—DIFFERENT OFFENSES—OPERATION CONCURRENTLY.

A national bank president, having been convicted under three indictments, was sentenced on one of the counts to a term of imprisonment without the imposition of a fine, to run concurrently with the sentence on the counts of the other two indictments. *Held*, that such sentence was in legal effect a single judgment and sentence, and, being supported by the other two indictments, it was immaterial that the evidence did not support a conviction on the third.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3183–3189; Dec. Dig. § 1177.*]

10. WITNESSES (§ 277*)—CROSS-EXAMINATION OF ACCUSED.

Where, in a prosecution of a national bank president for violation of the national banking act, accused had testified in his direct examination that certain notes executed to a trust company had been paid in full with interest, and one of the indictments charged that the notes had never been paid, it was proper to permit the government to cross-examine accused fully as to the transaction by which a credit was obtained with the trust company to take up the notes.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 925, 979–983; Dec. Dig. § 277.*]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William L. Norton was convicted of violating the national banking act, and he brings error. Affirmed.

Charles W. German and Delbert J. Haff, both of Kansas City, Mo. (Haff, Meservey, German & Michaels, of Kansas City, Mo., on the brief), for plaintiff in error.

William J. Gregg, U. S. Atty., of Tulsa, Okl.

Before SANBORN, Circuit Judge, and WM. H. MUNGER, and TRIEBER, District Judges.

WM. H. MUNGER, District Judge. On June 24, 1911, a grand jury for the District Court of the United States for the Eastern District of Oklahoma returned 11 indictments, which were numbered from 586 to 596, inclusive, against the defendant, William L. Norton, as president of the American National Bank of Bartlesville, Okl., charging him with misapplication and abstraction of the funds of the bank, making false entries in the books of the bank, and false entries in reports to the Comptroller of the Currency. All of the indictments were by order of the court consolidated for trial, to which order of consolidation the defendant duly excepted.

On the trial the defendant was acquitted upon the first count in indictment 586, which alleged the abstraction of a draft for $27,125, drawn by one C. A. Houston, and convicted on the second count, which alleged a misapplication of the funds of the American National Bank in the sum of $27,125.

Indictment 587 contained six counts and charged the misapplication of six different items of funds of said American National Bank.

Indictment 590 consisted of three counts, which charged a false entry made in the general ledger of said American National Bank, by charging the Farmers' National Bank of Tulsa, Okl., with $25,000. The first count charged the false entry to be with intent to injure and defraud the bank. The second count charged the same entry to be with intent to deceive the board of directors and other officers of the bank. The third count charged the entry to be with intent to deceive any agent appointed by the Comptroller of the Currency to examine into the affairs of the bank. A verdict of guilty was found upon each one of these counts.

Verdicts of not guilty were returned as to all the counts in indictments 588, 589, 591, 592, 593, 594, 595, and 596.

Before pleas of not guilty were entered the defendant filed a demurrer to the several counts in the respective indictments which were overruled, to which defendant excepted.

After the jury had returned their verdict of guilty, the defendant filed his motion for a new trial, alleging bias, etc., on the part of one of the jurors, and supported his motion by testimony. The motion for a new trial was overruled, and the defendant thereupon filed a motion in arrest of judgment, which was also overruled, to which defendant excepted. The court sentenced the defendant to imprisonment upon each of the several counts upon which the jury had returned a verdict of guilty. The defendant brings the case here and assigns error in the order of the court consolidating the several counts of the indictment.

[1] These·indictments and all of the counts charged the defendant, as president of the American National Bank of Bartlesville, Okl., with acts of the same character and degree, and the order of consolidation was permissible under section 1024 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 720), and it was not error on the part of the court to consolidate said indictments and try the same as one. Krause v. United States, 147 Fed. 442–444, 78 C. C. A. 642, and cases cited; Morse v. United States, 174 Fed. 539, 98 C. C. A. 321, 20 Ann. Cas. 938.

It is assigned as error that the court erred in overruling the demurrers to the several counts in the respective indictments. As the defendant was only found guilty on the second count of indictment 586, on the six counts in indictment 587, and the three counts of indictment 590, it will only be necessary to consider the sufficiency of the several counts in these indictments.

[2] The second count in indictment 586 charges the defendant, while president of the American National Bank of Bartlesville, Okl., with misappropriating the property of the bank, to wit, a draft drawn by C. A. Houston upon the Columbia Bank & Trust Company of Oklahoma City, of the value of $27,125. The principal ·complaint to the count of the indictment·is that it fails to charge that the bank sustained any loss by the transaction, and, second, that it is bad for duplicity.

[3] The charge of duplicity is based upon the fact that, when the draft for $27,125 was drawn, there were substituted in its place three separate promissory notes, aggregating said sum of $27,125, which notes, it was alleged, were fictitious, of no value, and worthless, and it was claimed that, because three notes were used as substitutes for the draft, three offenses are charged. In support of this proposition counsel quote from United States v. Martindale (D. C.) 146 Fed. 280, the following:

"As the misapplication of the funds of the bank was only completed when the money was paid, and payment was made of three separate notes, they were separate, distinct misapplications, and it was error to join them in the same count. If the misapplication was consummated only when the money was applied and used, the acts of misapplication were separate and distinct, and it would follow that this objection" as to duplicity "is well taken."

That, however, is not the case here. The charge of misapplication in the count under consideration was of the draft referred to. The misapplication consisted in the taking of a single draft—a valuable asset of the bank—and substituting in lieu thereof three alleged fictitious and worthless notes. Let us suppose that an indictment charged the misappropriation of a $20 gold piece, an asset of the bank, by substituting therefor 20 counterfeit $1 bills. Would it be claimed for a moment that that constituted 20 separate and distinct transactions, requiring 20 separate and distinct counts? Clearly not. The asset alleged to have been misappropriated was a single draft, and its misappropriation was only and could only be a single act and transaction. Hence this count of the indictment was not duplicitous. It is further claimed that, as this count of the indictment fails to charge that the bank sustained any loss by the transaction, it is insufficient. The test

is not whether the bank ultimately was loser, but whether the misappropriation was made by the defendant with an intent to injure the bank. Persons occupying positions of trust, who handle large sums of money for others, may misappropriate or embezzle these funds, and before discovery of the crime refund them, if able so to do; but such refund would not condone the crime or relieve the party of the consequences therefor, the crime consisting in the unlawful misappropriation or embezzlement, and the intent existing at the time, regardless of the fact whether in the end the parties whose property was unlawfully converted sustained an actual loss.

[4] It is said that the first count of indictment 587 is duplicitous in that it charges that the misapplication was by means of moneys and credits being withdrawn in the form of cash exchange, in the sum and value of $9,000, by means of a check drawn by the Bartlesville State Bank upon the American National Bank in the sum of $9,000, the state bank having no credit with the American National Bank, and giving therefor four drafts payable to the customers of the Bartlesville State Bank, one for $3,000 and three for $2,000 each. It is argued that this constituted, not a misapplication, but a mere matter of bookkeeping in relation to giving credits. It is true that the mere giving of a wrong credit upon the books of a bank would not of itself constitute misappropriation; but, in this case, it was not a matter of mere credit, but the bank issued to third parties its drafts or checks, which were equivalent to money, and the misappropriation took place when such drafts were issued in payment of the $9,000 draft drawn by the Bartlesville State Bank, and not when the four drafts were ultimately paid by the American National Bank. The misapplication charged in the indictment is the payment of the draft for $9,000, drawn by the Bartlesville State Bank by means of the four drafts of the American National Bank. Hence this count of the indictment is not duplicitous. And, for like reasons, the demurrer to all of the counts in this indictment was properly overruled.

[5] Indictment 590 charged, as we have said, a false entry in the ledger of the American National Bank "in the account kept in said general ledger with the Farmers' National Bank of Tulsa, and was entered in the blank space provided in said book under date of November 21, 1908, in the column designated 'debit' by noting therein the words and figures, to wit, '25,000 Bart. State,' which said entry so as aforesaid made in said book in the column and place aforesaid, then and there purported to show and did in fact show, and was by the said William L. Norton designed and intended to show, that the sum of $25,000 had been then and there received by the American National Bank of Bartlesville from the Farmers' National Bank of Tulsa." It is argued that:

"It is very manifest that an entry of '25,000' in the debit column of the ledger in the account with the Farmers' National Bank of Tulsa did not indicate that $25,000 had been 'received' by the American National Bank from the Farmers' National Bank. If that sum had been received from the Farmers' National Bank, the Farmers' National Bank should have an entry in the credit column instead of the debit."

The indictment, however, further charged that, by this transaction, the account of the Farmers' National Bank with the American National Bank had been reduced in the amount of $25,000. As said, the offense charged in this indictment was the making of a false entry in the ledger of the American National Bank, and this objection is a mere play upon words. What was intended, and what would be apparent to any one familiar with bookkeeping, by the charge, was that the Farmers' National Bank was debited or charged on the books of the American National Bank with $25,000. That sum was taken from its credit, and, unless it was paid out on a check or draft of the Farmers' National Bank, or for the use of the Farmers' National Bank, it constituted a false entry. We think the demurrer to this indictment was properly overruled.

Relative to the charge of the false entry in the ledger of the American National Bank, by charging the Farmers' National Bank of Tulsa, Okl., with $25,000, as alleged in indictment 590, the evidence discloses that the defendant, Norton, was not only president of the American National Bank of Bartlesville, but was also a stockholder and director in the Farmers' National Bank of Tulsa; that some time during October, 1908, two brothers by the name of Lewis, with their father, were operating a state bank at Ramona, Okl.; that they desired to start a state bank with a capital of $25,000 in Bartlesville, Okl. The Lewis Bros. applied to the defendant to loan them the $25,000, or take an interest with them in the bank. This the defendant agreed to do and executed to the Lewises a written agreement as follows:

"Bartlesville, Ind. Ter., Oct. 15, '08.

"Agreement.

"I hereby agree to furnish $25,000 for the purpose of establishing a state bank in Bartlesville by Lewis Bros. of Ramona, Okla.

"I agree to give them 50 per cent. of the net profits of the bank and pay $150 per month, less 6 per cent. on $12,500 salary to the active manager (cashier) (Pres. 125 when active).

"I agree to sell one-half of the stock in the bank at any time to them at book value.

"I agree to purchase 2,000 worth of stock in the Ramona State Bank.

"It is hereby mutually agreed that the Ramona State Bank will become a customer of the American Nat'l Bank of Bartlesville.

. "W. L. Norton."

The Lewises thereupon organized the Bartlesville State Bank, certified in their articles of incorporation the capital to be $25,000, that the amount had been fully paid up, and applied to the defendant for the money. The defendant, not having the money personally, tried to talk with Mr. Blaise, president of the Farmers' National Bank of Tulsa, over the telephone. Learning that Mr. Blaise was absent in Kansas, but would return that evening and pass on the train through Bartlesville, he met Mr. Blaise at the train, had a few moments conversation with him, during the short time the train stopped to let off and take on passengers. In this conversation defendant informed Blaise of the situation relative to the establishment of the Bartlesville State Bank, and requested a loan from the Farmers' National Bank upon paper which he would give it. He testified that Mr. Blaise agreed

to make the loan provided it did not require cash, so as to reduce the bank's reserve—he would make the loan if it could be managed by carrying it in the accounts between the American National Bank and the Farmers' National Bank. Mr. Blaise testified substantially to the same effect. The next day, namely, November 20th, defendant testified he forwarded by mail to Mr. Blaise, as president of the Farmers' National Bank, his own note for $10,000, the note of his wife for $10,000, and a note for $5,000 owned by himself and wife, given by the Exchange Oil Company, of which the defendant was president. The next day, supposing that the notes had reached Mr. Blaise, and been credited to the account of the American National Bank, he directed a charge to be made upon the books of the American National Bank against the account of the Farmers' National Bank of Tulsa, in the sum of $25,000, and credited on the books of the American National Bank the Bartlesville State Bank with the sum of $25,000. On that day, November 21st, defendant wrote a letter to the State Bank Commissioner, on behalf of the American National Bank of Bartlesville, certifying that the $25,000 was on deposit in the American National Bank to the account of the Bartlesville State Bank. No entry was ever made on the books of the Farmers' National Bank with respect to this $25,-000 transaction. The letter which defendant says he forwarded to Mr. Blaise, president of the Farmers' National Bank, inclosing the notes mentioned, Mr. Blaise testified he received; but that much of his mail received at the bank was unopened and unattended to because of pressure of other business matters, and sickness in his family, and that to the subject of the conversation with defendant he gave no thought after parting with the defendant at the train in Bartlesville. Some time in January, 1909, the defendant, in a conversation with Mr. Blaise over the telephone, inquired relative to the receipt of the notes, and was advised that the notes had not been received at the bank. Mr. Blaise thereupon made search of his desk and found a letter from defendant, inclosing the notes, unopened. At the request of defendant, the notes were returned and no entry was ever made upon the books of the Farmers' National Bank with respect to them. Upon the receipt by the defendant of the notes thus returned, he caused to be entered a credit to the account of the Farmers' National Bank, on the books of the American National Bank, in the sum of $25,000. To offset this credit of $25,000 to the Farmers' National Bank, he charged his own account with $17,000 and the balance of $8,000 he charged to three oil companies belonging to himself—Ætna Oil Company, $3,-000; Central Oil Company, $2,000; and Madison Oil Company, $3,-000. The oil companies had no account with the American National Bank; hence their accounts were overdrawn the amount of the charge. The charge of $17,000 against defendant's account overdrew it in the sum of $821.88. These overcharges against the account of defendant and his three oil companies were later made good.

The court charged the jury somewhat in detail, relative to the transaction, and stated to them as follows:

"Now, you have heard the defendant's explanation. If you believe from the evidence that the defendant, William L. Norton, on or about the 20th of No-

vember, 1908, made an arrangement or agreement with E. F. Blaise, the president of the Farmers' National Bank of Tulsa, whereby said Blaise, as president of the said Farmers' National Bank, agreed that the said Farmers' National Bank would loan to the said William L. Norton the sum of $25,000, or would discount certain notes in that amount which the said Norton agreed to forward to the said Blaise, as president of the Farmers' National Bank, and agreed to place the proceeds of said notes to the credit of the American National Bank of Bartlesville, to offset a credit to be made through said American National Bank of Bartlesville to the Bartlesville State Bank, in the sum of $25,000, and that in pursuance of that arrangement, or agreement, between the said Norton and the said E. F. Blaise, the defendant, Norton, forwarded through the mail to E. F. Blaise, as president of the Farmers' National Bank, a note of himself for $10,000, and the other notes, in regard to which testimony of the defendant has been offered, to be discounted by the Farmers' National Bank of Tulsa, and placed to the credit of the American National Bank of Bartlesville, and that thereupon, and on the 21st day of November, 1908, the said Norton charged the account of the Farmers' National Bank with $25,000, and placed the same to the credit of the Bartlesville State Bank, in good faith, in pursuance to said agreement, then you will find the defendant not guilty of this charge."

The court also said to the jury:

"The burden is upon the government to establish the defendant's guilt to your satisfaction beyond a reasonable doubt, and evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain conviction. Unless there is substantial evidence of facts, which exclude every other theory but that of guilt, it is the duty of the jury to return a verdict for the accused."

[6] Counsel for defendant argue with great force and earnestness that the testimony does not warrant finding defendant guilty with respect to this transaction. They say, and correctly, too, that Mr. Blaise, as president of the Farmers' National Bank, had authority to discount for the bank the notes sent him by the defendant, and that the act of the defendant in charging the account of the Farmers' National Bank, upon the books of the American National Bank, with said $25,000, in reliance upon the fact that the Farmers' National Bank had received and discounted the notes, was a legitimate transaction. We concede the correctness of this proposition; but, as stated, the court fairly submitted the question to the jury whether there was any such agreement between defendant and Blaise, relative to the discount of the notes, and whether the charge of $25,000 upon the books of the American National Bank against the Farmers' National Bank was made by the defendant in good faith, relying upon such an arrangement with Mr. Blaise, and told the jury in explicit language that, if they found that to be a fact, then they should find the defendant not guilty. The jury, by their verdict, necessarily found that the testimony of the defendant in this respect was untruthful. It is true, there was no direct testimony contradicting that given by defendant and Blaise, and, while the jury should not arbitrarily disregard the testimony of any witness, they have a right, in determining its credibility, to consider all of the surrounding facts and circumstances in connection with the transaction, and the manner and appearance of the witness in giving his testimony.

[7] As said by the Supreme Court, in Quock Ting v. U. S., 140 U. S. 417, 11 Sup. Ct. 733, 851, 35 L. Ed. 501:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying, may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

Applying that principle to this case, while there was no direct evidence contradicting the testimony of the defendant and Blaise, in regard to this transaction, it was for the jury to determine its credibility by considering the reasonableness of their statements, and the manner in which they gave their testimony. The reasonableness may be considered by this court; the manner in which they gave their testimony cannot be, of course, correctly portrayed. There are some circumstances which might properly induce the jury to discredit the testimony, to wit, that the defendant, having forwarded the notes to the Farmers' National Bank or to Blaise, on the 20th of November, not hearing anything in response thereto, should have remained quiet, making no inquiry until along about the 6th or 7th of January following. It would naturally be that, defendant not receiving any acknowledgment of their receipt, and being in the habit of communicating with Blaise every few days, would have made some inquiry relative to whether the notes had been received and the American National Bank given credit therefor. Again, when the manner in which defendant's personal account was credited, so as to take up the respective overdrafts, is considered, namely, that Blaise gave his note for $40,000 to the Columbia Bank & Trust Company, of which the defendant was the president, drew his draft upon the Columbia Bank & Trust Company for that amount to the defendant, which defendant deposited in the American National Bank to his own personal account, the defendant giving to Blaise a writing certifying that the $40,000 note given by Blaise to the Columbia Bank & Trust Company was to be paid by defendant, thus showing that the defendant was using various devices and various corporations of which he was an officer to enable him to maintain his personal account in the American National Bank, the jury might well discredit the testimony of defendant and Blaise respecting the agreement in November, that the Farmers' National Bank would discount the notes of himself, his wife, and the oil company, in the sum of $25,000 and place the same in the Farmers' National Bank to the credit of the American National Bank. If there was no such agreement between Blaise and Norton, by which the Farmers' National Bank was to discount those notes and credit them to the American National Bank, then the entry in the American National Bank respecting the same was clearly a false entry and known by defendant to be false, and the jury might properly say that it was with intent not only to deceive the officers of the bank and some agent of the Comptroller of the Currency, but to

defraud the American National Bank. So, we think the court did not err in refusing to direct a verdict for the defendant in respect to this transaction.

What we have said thus far relates to the three counts in indictment 590.

Indictment 587, consisting of six counts, upon which the defendant was found guilty, charged misapplication of the funds of the American National Bank by payments at different times and in different amounts of drafts drawn by the Bartlesville State Bank against the credit of the $25,000. If we are right in the foregoing proposition, then the credit of the $25,000 on the books of the American National Bank, to the account of the Bartlesville State Bank, was without consideration, and the Bartlesville State Bank did not have a bona fide credit with the American National Bank, and these payments were a misappropriation of the funds of the American National Bank, and, as under the evidence the jury was warranted in finding that the defendant was a half owner of the Bartlesville State Bank, such misappropriation was for the benefit of defendant. Whether these amounts were misappropriation of the funds of the American National Bank is entirely dependent upon whether the credit to the Bartlesville State Bank of $25,000 was bona fide, and that depends upon the truthfulness of the alleged transaction between defendant and Blaise, heretofore referred to.

[8] The criminal character of these transactions is to be determined from the evident facts and circumstances existing at the time of the respective transactions. The fact that subsequently the defendant may have made good to the American National Bank the amounts thereof, and that the bank did not lose by the transaction, does not change the unlawful character of the transactions when made.

[9] It is urged that the evidence does not support the verdict of conviction upon the second count of indictment 586, which charged a misapplication of the funds of the American National Bank to the extent of $27,125. It is unnecessary for us to review the evidence in respect to this count, as the sentence of the court did not impose any fine, but was one of imprisonment, for the same period, and running concurrently, with the sentence on the counts of the indictments 587 and 590. Hence, in legal effect, the judgment that was imposed by the court was practically a single judgment and sentence, and being supported by indictments 587 and 590, in which there was no error in the trial and conviction, even if the evidence did not support the count in indictment 586, it would not warrant a reversal of the judgment. Such was the holding of this court in Billingsley v. U. S., 178 Fed. 653–662, 101 C. C. A. 465. The same principle was announced in Haynes v. U. S., 101 Fed. 817, 42 C. C. A. 34; Tubbs v. U. S,, 105 Fed. 59, 44 C. C. A. 357; U. S. v. Lair, 195 Fed. 47, 115 C. C. A. 49; Bartholomew v. U. S., 177 Fed. 902–905, 101 C. C. A. 182; Evans v. U. S., 153 U. S. 609, 14 Sup. Ct. 939, 38 L. Ed. 839; and Claassen v. U. S., 142 U. S. 140–146, 12 Sup. Ct. 169, 35 L. Ed. 966.

[10] The government, in its cross-examination of defendant, went quite extensively into the transaction by which a credit was placed in

the Columbia Bank & Trust Company to take up certain specified notes. This testimony, or a large portion of it, was objected to by the defendant, exception taken to its admission, and its admission is assigned as error. This testimony was proper and legitimate cross-examination, as the defendant had testified in his direct examination that these notes were paid in full, with interest; and, as one of the charges in the indictment was that the notes had never been paid, it was a proper subject-matter for cross-examination to show how they were paid.

Complaint is made to several paragraphs in the charge of the court to the jury. It would serve no useful purpose to consider them each separately. We have given careful consideration to the argument of counsel with respect thereto; the charge and its effect upon the minds of the jury must be considered as an entirety, and when so considered we think it a very full and fair statement of the issues and the law applicable to the case, and that it was in no way prejudicial to the defendant.

For the reasons above given, the judgment is affirmed.