## SEEBERGER v. SCHWEYER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 295. Submitted March 19, 1894. — Decided May 14, 1894.

The words "date of original importation," as used in Rev. Stat. § 2970, refer to the exterior port of first arrival of the merchandise, and not to the interior port of destination.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Whitney* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This was an action brought in the Circuit Court of the United States for the Northern District of Illinois by John

Schweyer, an importer of goods, against Anthony F. Seeberger, the collector of customs for the port of Chicago, to recover duties paid under protest in 1888, upon goods imported in 1886 and placed in a bonded warehouse.

A jury was waived, and the case was tried by the court, which found the facts as follows:

"That on the 26th day of October, 1886, the plaintiff imported, *via* the port and district of New York, certain merchandise, and from thence transported the same to the port and district of Chicago, under the immediate transportation act, where it was duly entered for warehouse on the 11th day of December, 1886. That within a year after their arrival in Chicago, but more than a year after their arrival at the port of New York aforesaid, the plaintiff offered to pay the duties and charges assessed against said merchandise, but the customs officer at the port of Chicago assessed an additional duty of 10 per cent on the amount of duties and charges due thereon, under section 2970, Revised Statutes, for the reason, as he claimed, that the merchandise had not been withdrawn for consumption within one year from the date of the original importation, claiming that the date of original importation was the date when the merchandise arrived at the port of New York aforesaid."

The court further found that the plaintiff paid the additional duty, under protest, and duly appealed, and the last finding of the court was as follows:

"The court further finds that the merchandise was withdrawn for consumption at Chicago, November 2, 1887, which said withdrawal was at the port of original importation, in' accordance with the law."

From the judgment of the court in favor of the plaintiff the case has been brought here on error. The question presented by the record is the single one whether the period of one year, within which the plaintiff was entitled to withdraw the goods upon paying the duties and charges, runs from the date of the arrival at the port of New York; or from the date of the arrival at the port of Chicago.

Section 2970 of the Revised Statutes reads as follows:

" Any merchandise deposited in bond in any public or private bonded warehouse may be withdrawn for consumption within one year from the date of original importation on payment of the duties and charges to which it may be subject by law at the time of such withdrawal; and after the expiration of one year from the date of original importation, and until the expiration of three years from said date, any merchandise in bond may be withdrawn for consumption on payment of the duties assessed on the original entry and charges, and an additional duty of ten per centum of the amount of such duties and charges."

In connection with that section must be read the first section of the act of June 10, 1880, c. 190, 21 Stat. 173, as follows:

" That when any merchandise . . . imported at the port of New York . . . shall appear by the invoice or bill of lading and manifest of the importing vessel to be consigned to and destined for either of the ports specified in the seventh section of this act, the collector at the port of arrival shall allow the said merchandise to be shipped immediately after the entry prescribed in section two of this act has been made."

Section 2 provides that the merchandise shall be examined as far as necessary, but shall not be subject to appraisement and liquidation of duties at the port of first arrival, but shall be appraised " at the port of destination."

Section 7 provides " that the privilege of immediate transportation shall extend to the port of . . . Chicago," etc.

Do, then, the words " date of original importation," as used in section 2970, refer to the exterior port of first arrival or to the interior port of destination ? It is urged on behalf of the government that Congress cannot have intended that the period for warehousing should be indefinitely extended beyond a year after actual importation, and that this would be the result of fixing the date of importation at the arrival at the interior port, owing to the delays, sometimes considerable, in transportation.

The case of *Hartranft* v. *Oliver*, 125 U. S. 525, 528, is cited,

as holding that goods in process of transportation, under charge of the customs officers, are in effect already warehoused, within the meaning of the customs laws. That was where the imported article, salad oil, arrived in a vessel at the port of Philadelphia on Saturday, June 30, 1883, and was entered at the custom-house at two o'clock in the afternoon. It was not practicable to remove the goods on that day, and the next day was Sunday. On July 7 the cases were entered in bond at the custom-house, and on the same day the importer made a withdrawal entry for the goods, and offered to pay the collector duty thereon at the rate of 25 per cent ad valorem, but the collector exacted a specific duty of 25 cents per gallon, a change of rate of duty having gone into effect on July 1, and the court held, per Mr. Justice Field, that "goods on board of a ship, in charge of a custom-house officer, preliminary to their removal to a public store or a bonded warehouse, and during the time necessary for that purpose, are in like custody, and so are within the spirit and intent of the law subject only to such duties as are leviable when the goods are freed from such custody. So far as the government is concerned, they are in the same position as if technically in a public store or bonded warehouse. When in either of these places, they cannot be removed without a permit from the collector. When on shipboard, in charge of a custom-house inspector, they are in the same condition, and cannot be removed without a like permit. . . . The act of Congress of March 28, 1854, which is now embraced in § 2971 of the Revised Statutes, in providing for the deposit of goods in public stores and bonded warehouses, declares that 'any goods remaining in public store or bonded warehouse beyond three years shall be regarded as abandoned to the government;' and in the construction of this clause the Treasury Department has decided that the period limited for their remaining in a public store or a bonded warehouse includes the time on shipboard, after the arrival of the ship in port. Treasury Regulations of 1857, art. 483."

If, then, goods remaining on a vessel after arrival at the port of New York, and when the vessel is in charge of a custom-house officer, are to be regarded, within the customs laws,

as within the custody of the government in the same sense as if they had been actually discharged into a custom-house or bonded warehouse, it would seem to follow that when goods have arrived at the port of New York, and the arrival of the vessel has been reported at the custom-house, and then the goods, with the consent and allowance of the collector, under the provisions of the 1st and 2d sections of the act of June 10, 1880, have been shipped to Chicago, such goods must be deemed to have been warehoused from the time of the arrival of the ship.

As the language of section 2970 is express and free from ambiguity in specifying that, on payment of the duties and charges, merchandise may be withdrawn within one year from *the date of original importation,* and that an additional duty of ten per centum shall be assessed against goods after the expiration of one year from the *date of original importation,* and as the argument that the port of destination is to be regarded as the port of original importation is not based on the language of the act of June 10, 1880, but is inferential only, we think that the natural and safe course is to abide by the words of the statute. In the first section the language is " *any merchandise imported at the port of New York,*" etc., which naturally means that such importation is the original importation. This conclusion is strengthened by the contents of the third section, which provides that the merchandise shall be delivered to and transported by common carriers, to be designated for this purpose by the Secretary of the Treasury, and to and by none others; that such carriers shall be responsible to the United States for the safe delivery of such merchandise to the collector at the port of its destination; and that before they shall be permitted to receive and transport any such merchandise such carriers shall become bound to the United States in bonds in such form, amount, and condition as the Secretary of the Treasury shall require. This would seem to bring such carriers within the meaning of the case heretofore cited, *Hartranft* v. *Oliver,* and the goods in their charge may well be regarded as in like condition with goods in a custom-house or bonded warehouse.

Upon the whole, we conclude that the court below erred in refusing the defendant's request to hold the law to be that the port of New York was the port of original importation, and not the port of Chicago; and as this was a case of a special finding which ascertained all the facts of the case, there is no reason for awarding a new trial. *Allen v. St. Louis Bank*, 120 U. S. 20, 40.

*Judgment reversed and case remanded to the Circuit Court, with directions to enter judgment for the original defendant.*

MR. JUSTICE HARLAN dissented.