## DOE v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

### Nos. 5196, 5197.

1. INDICTMENT AND INFORMATION ☞99—DESCRIPTION OF OFFENSE—REFERENCE TO OTHER COUNTS.

That a count in an indictment is bad does not affect the propriety of references in other counts to facts stated therein to avoid repetition.

2. CRIMINAL LAW ☞984—SENTENCE—LEGALITY.

Where a verdict of guilty is rendered upon all the counts of an indictment, and the sentence imposed does not exceed that which might properly have been imposed under any one count, the sentence is good, if any count is sufficient.

3. INDICTMENT AND INFORMATION ☞110(3)—ESPIONAGE ACT—LANGUAGE OF STATUTE.

An indictment, under Espionage Act, tit. 1, § 3, for willfully obstructing the recruiting or enlistment service, is sufficiently specific, if it charges the offense in the language of the statute.

4. CRIMINAL LAW ☞1036(8) — FEDERAL COURTS — REVIEW BY APPELLATE COURT.

It is within the sound discretion of the Circuit Court of Appeals to notice the claim of counsel for a convicted defendant that there was no evidence to sustain the verdict, although the question was not raised in the trial court.

5. ARMY AND NAVY ☞40—ESPIONAGE ACT—WILLFULLY OBSTRUCTING RECRUITING SERVICE.

Evidence *held* sufficient to sustain a conviction for willfully obstructing the recruiting and enlistment service of the United States.

6. CRIMINAL LAW ☞24—INTENT—PRESUMPTION FROM UNLAWFUL ACT.

A defendant must be presumed to have intended the legitimate and necessary consequences of his willful and deliberate acts.

7. ARMY AND NAVY ☞40 — ESPIONAGE ACT—RECRUITING SERVICE — "OBSTRUCT."

The word "obstruct," as used in Espionage Act, tit. 1, § 3, making it an offense to obstruct the recruiting or enlistment service, should be given a broad meaning, and includes to hinder, impede, embarrass, and retard, in whole or in part.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obstruct.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Criminal prosecution by the United States against Perley B. Doe. From a judgment of conviction, defendant brings error. Affirmed.

F. T. Johnson, of Denver, Colo. (S. H. Johnson, of Denver, Colo., on the brief), for plaintiff in error.

Harry B. Tedrow, U. S. Atty., of Denver, Colo.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge. Doe was charged in two indictments, No. 3105 and No. 3106, with violating section 3, title 1, and section 3, title 12, Act of Congress June 15, 1917 (40 Stat. 217, c. 30). Each indictment contained three counts. The indictments were consolidated for the purpose of trial, and the defendant was found guilty upon each count, and a general judgment was entered on each indictment; the

sentences of imprisonment to run concurrently. The indictment was attacked by demurrer and motion in arrest, on the ground that neither of the counts of the indictments stated facts sufficient to constitute an offense against the United States. The third count of indictment 3105 was in the following language:

"That said Perley B. Doe, on, to wit, November 26, A. D. 1917, at the city and county of Denver, in the state and district of Colorado, and within the jurisdiction of this court, the United States then and there being at war with the Imperial German Government, pursuant to a joint resolution of the Congress of the United States, approved by the President of the United States, April 6, 1917, did feloniously and willfully .obstruct the recruiting and enlistment service of the United States, to the injury of the said service, and to the injury of the United States, in that he, said Perley B. Doe, did then and there deposit and cause to be deposited in the post office of the United States at said city and county of Denver, and thereby cause the post office establishment of the United States to deliver to the Lutheran Church, South Logan and Dakota streets, Denver, Colorado, and divers persons to the grand jurors unknown, a certain circular, and circulars, which said circular and circulars were in words and figures identical with the words and figures of the statement set forth in the first count of this indictment, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

· The circular referred to in said count is as follows:

"In his war message, April 2, Wilson spoke of Germany's 'promise' to end the U-boat warfare. At Madison Barracks Lansing said: 'The immediate cause of war was the announced purpose of Germany to break its promise as to submarine warfare.'

"Germany never made any such promise. In the note of May 4, 1916, containing the so-called promise, Germany carefully stated that as to the future she must 'reserve itself complete liberty of decision.'

"For brief but adequate statement of diplomatic notes that led to war send to your Congressman for La Follette's speech of April 4, 1917, which was suppressed.

"Endless chain. Please write at least one copy and send this and that to friends of immediate peace."

[1] The fact that the first count may have been bad in no way affects the propriety of referring to it to save repetition. Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097.

[2] Where a verdict of guilty is rendered upon all the counts of an indictment, and the sentence imposed does not exceed that which might properly have been imposed upon conviction under any single count, such sentence is good, if any such count is sufficient. Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Ballew v. United States, 160 U. S. 187, 197, 16 Sup. Ct. 263, 40 L. Ed. 388; Selvester v. United States, 170 U. S. 262, 267, 18 Sup. Ct. 580, 42 L. Ed. 1029; Hardesty v. United States, 168 Fed. 25, 26, 93 C. C. A. 417.

[3] Counsel for defendant urges that the count above quoted is bad, because it does not allege facts showing how or in what way the act of the defendant would obstruct the recruiting and enlistment service of the United States, and does not give the names of the particular persons who were affected by the conduct of the defendant. The offense charged is purely statutory, and the words of the statute contain all

the ingredients of the offense. The count under consideration charges the offense in the language of the statute, and this is sufficient. Potter v. United States, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214; United States v. Gooding, 12 Wheat. 460, 6 L. Ed. 693; United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520: Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392.

"The means of effecting the criminal intent, or the circumstances evincive of the design with which the act was done, are considered to be matters of evidence to go to the jury to demonstrate the intent, and not necessary to be incorporated in an indictment." Wharton's Criminal Law, § 292; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; May v. United States, 199 Fed. 42, 117 C. C. A. 420.

We think the count in question clearly apprised the defendant of what he must be prepared to meet, and showed with accuracy to what extent he might plead a former acquittal or conviction. Cochran v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704.

[4] The question of the sufficiency of the evidence to sustain a verdict of guilty on the count under consideration was not raised in the trial court during the trial, but we are asked to consider it, although not so raised. It is within the sound discretion of this court to notice the claim of counsel that there was no evidence to sustain the verdict of guilty, although this question was not raised in the trial court. Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 28 Sup. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 L. Ed. 465; Weems v. United States, 217 U. S. 349, 30 Sup. Ct. 544, 54 L. Ed. 793; Sykes v. United States, 204 Fed. 909, 123 C. C. A. 205; Moore v. United States, 224 Fed. 95, 139 C. C. A. 651.

[5] We have decided to exercise our discretion in this case. The undisputed evidence showed that the defendant circulated the statement set forth in the indictment and several hundred others of similar import to German Lutheran and other churches of various denominations, professors in German colleges and other Universities, and individuals. Some of the cities to which the statements were sent were Boston, New York, Milwaukee, Denver, and San Francisco. A statement sent to Beth-Eden Church, Denver, Colo., closed with the words:

"We are forced to the endless chain to get the truth before the people. Will you help Truth, Free Speech, and Peace by writing and circulating one or many copies of this? Secret League of Patriots for Free Speech or Blood."

A statement sent to Benjamin Largent, Denver, Colo., opened with the words:

"By the greatest campaign of lies the world has ever known the young men of Germany and America are being made to hate and kill each other."

A statement sent to J. G. Marner, Denver, Colo., opened with the statement:

"By clever lies spread by war parties in all countries, the young men of the world are being duped into hating and killing each other."

The circulars, other than the one set forth in the indictment, were circulated about the same time as the former, and were offered for the

purpose of showing intent. The defendant testified that his intent was only to establish the truth. On cross-examination the defendant admitted that in a letter to his sister, which was seized by the post office authorities, he had used the following language:

"You have seen the beautiful pictures in the post office labeled 'Great Opportunity to See the World. Enlist in the Navy.' The government deliberately entices its citizens, thoughtless boys for the most part, into the army and navy and then holds them in peonage." •

Also:

"Our laws, recognizing that peonage is an abuse, makes it illegal everywhere else. In time of peace there is no excuse for it certainly in the military forces. To allow a young man of 18 to sell himself into slavery to slick-tongued recruiting officers is of course an outrage."

Also:

"I saw the prisoners in the naval prison at Charleston before it was moved to Portsmouth. Mere boys sentenced to two years in prison because they had left a job they did not like. It went to the heart of all of us, I think; the looks on the faces of some of those boys! I am sure that unjust punishment will make criminals of some. Others it will mark humiliated and broken for life. A crowd of us Postmen visited the prison together and there was a hush upon us as we went away. I for one swore (as Lincoln did) 'that if ever I were given power slavery would be abolished in our army and navy."

We think that a fair construction of the circular contained in the indictment shows that its author intended to convey the idea that, in so far as the United States based their declaration of war upon the announced purpose of Germany to break her promise as to submarine warfare, the United States was wrong, as Germany had never made any such promise. Such an argument would have a direct tendency to obstruct the recruiting and enlistment service of the United States. Whether a man shall enlist in the service of the United States is determined by the conclusion reached in his mind as to his duty to do so. Nothing would be more liable to prevent or obstruct an affirmative decision than the thought that his country was in the wrong.

[6, 7] The necessary and legitimate consequence therefore of the circular would be to obstruct the recruiting and enlistment service of the United States, and, the circular having been knowingly issued, the defendant must be presumed to have intended the necessary and legitimate consequences of his act. Moreover, looking outside of the circular to other evidence in the record, it appears beyond question that the defendant was engaged in the advocacy of principles which would necessarily obstruct the recruiting and enlistment service of the United States, and if such service was so obstructed it would be to the injury of the United States. The word "obstruct" should be given a broad meaning in order to carry out the undoubted intention of Congress. It has been uniformly held that the word as used in the statute means to hinder, impede, embarrass, and retard, in whole or in part, the recruiting and enlistment service of the United States.

The constitutional power of Congress to enact the legislation under which the indictment is drawn is so well established at this day as to need no discussion. The power to declare war is not to be turned into

an empty phrase by limiting the power of the United States to make the war power effective.

The third count of indictment No. 3106 charged the defendant with using the mails and postal service of the United States for the transmission of the circular described by reference in the third count of indictment No. 3105. For reasons heretofore stated, this count was good, and, as the mailing of the circular was admitted, it followed as a matter of course, if the defendant was guilty under the third count of indictment No. 3105, he was guilty under the third count of indictment No. 3106, as the jury found. This state of the record sustains the judgment of the court on indictment No. 3106, and we need not discuss the other counts of that indictment.

There is one objection to the judgments on each indictment which was not assigned as error, but called to the attention of the court at the argument. It is this: The formal judgments entered each recited that the court found the defendant "guilty of the crime of obstructing enlistment service of the United States." Giving to this language the effect claimed for it, it would not affect the judgment as to the third count of indictment No. 3105, heretofore considered. We think, however, the language must be considered as surplusage. The jury found the defendant guilty, not the court; and, the judgment on each indictment being general, no inference ought to be indulged in that the court intended to limit its sentence to count 3 of indictment No. 3105 in the sentence on that indictment, or that it did not intend to impose any sentence under indictment No. 3106. It would be of no practical value to the defendant if his claim should be sustained, except as to the fine of $100, as the terms of imprisonment run concurrently.

There being no error with reference to the third counts of each indictment, the judgments below are affirmed; it being unnecessary to consider the objection with reference to the other counts of the two indictments.

It is so ordered.