MATTERS v. UNITED STATES. *

(Circuit Court of Appeals, Eighth Circuit. November 21, 1919.)

No. 5357.

1. CRIMINAL LAW ☞753(2)—MOTION FOR DIRECTION OF VERDICT.
   Overruling of a motion by defendant for a directed verdict is not error, where there is evidence sufficient to sustain a conviction on any count of the indictment.

2. BANKS AND BANKING ☞256(3), 257(4)—INTENT OF "MISAPPLICATION OF MONEY, FUNDS, AND CREDITS" BY OFFICER FOR JURY.
   The issuing by an officer of a national bank, without consideration, of certificates of deposit which are afterward paid by the bank, constitutes a "misapplication of its moneys, funds, and credits," within Rev. St. § 5209 (Comp. St. § 9772), and in a prosecution based thereon the intent with which the act was done is a question for the jury.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misapplication.]

3. BANKS AND BANKING ☞256(½)—MAKING LOSS GOOD NO DEFENSE TO CRIMINAL TRANSACTIONS WITH NATIONAL BANK.
   The criminal character of transactions with a national bank is to be determined from the facts and circumstances existing at the time, and it is no defense to a prosecution based thereon that a loss resulting to the bank was subsequently made good.

In Error to the District Court of the United States for the District of Nebraska; Martin J. Wade, Judge.

Criminal prosecution by the United States against Thomas H. Matters. Judgment of conviction, and defendant brings error. Affirmed.

John Lee Webster and Frank H. Gaines, both of Omaha, Neb., for plaintiff in error.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied April 7, 1920.

T. S. Allen, U. S. Atty., of Lincoln, Neb. (F. A. Peterson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge. The plaintiff in error, hereafter defendant, was convicted and sentenced on each of 14 counts of an indictment charging violations of section 5209, R. S. U. S. (Comp. St. § 9772). Eleven of these counts charged the defendant with having aided and abetted one Luebben, president of the First National Bank of Sutton, Neb., in issuing and putting forth certain certificates of deposit without authority from the directors of said bank, with the intent to injure and defraud said banking association. Three of the counts charged the defendant with having aided and abetted said Luebben, as president of the bank, in misapplying the moneys, funds, and credits thereof with intent to injure and defraud said association. The jury returned a separate verdict of guilty on each of these counts. The defendant has brought the case here, assigning numerous errors in the proceedings which resulted in his conviction.

[1] Although indicted as an aider and abettor, the defendant was a principal under section 332, Penal Code. Act March 4, 1909, c. 321, 35 Stat. 1152 (Comp. St. 10506). There was a motion for a directed verdict, made by counsel for defendant at the close of the evidence for the prosecution; but this was waived by the introduction of evidence and the failure to renew it at the close of all the evidence. The court, however, was requested to instruct the jury to find the defendant not guilty on the counts which charged a misapplication of the moneys, funds, and credits of the bank. This request was refused, and the refusal is one of the errors assigned. If there is evidence sufficient to sustain the verdict on any count of the indictment, the assignment of error is without merit. Norton v. United States, 205 Fed. 593, 123 C. C. A. 609; Doe v. United States, 253 Fed. 903, 166 C. C. A. 3; Billingsley v. United States, 178 Fed. 653, 662, 101 C. C. A. 465; Haynes v. U. S., 101 Fed. 817, 42 C. C. A. 34; Tubbs v. U. S., 105 Fed. 59, 44 C. C. A. 357; United States v. Lair, 195 Fed. 47, 115 C. C. A. 49; Bartholomew v. U. S., 177 Fed. 902, 905, 101 C. C. A. 182; Evans v. U. S., 153 U. S. 609, 14 Sup. Ct. 939, 38 L. Ed. 839; Claassen v. United States, 142 U. S. 140, 146, 12 Sup. Ct. 169, 35 L. Ed. 966; Debs v. U. S., 249 U. S. 211, 216, 39 Sup. Ct. 259, 63 L. Ed. 566; Abrams et al. v. U. S. (November 10, 1919) 250 U. S. 616, 40 Sup. Ct. 17, 63 L. Ed. 1173.

Counts 16 and 17 charge a misapplication of the moneys, funds, and credits of the bank. The evidence on the part of the prosecution as to these counts shows that on June 14, 1913, Luebben, as president of the bank, issued two certificates of deposit, one payable to Mary E. Johnson, four months after date, for the sum of $1,500, and the other payable to James Richardson, three months after date, for the sum of $2,000. These certificates are known in the record as

Exhibits 26 and 27. Exhibit No. 26 bears the indorsement of Mary E. Johnson and Stockyards National Bank, South Omaha, Nebraska; Exhibit No. 27 bears the indorsement of James Richardson and City National Bank, Omaha. The testimony of Luebben in reference to these two exhibits, as given at the trial and as stated in the record in narrative form, is as follows:

"Mr. Luebben testified regarding these certificates 26 and 27: I did have a conversation with Mr. Matters over the telephone about these certificates 'the same day they were issued.' 'Mr. Matters called me up over the phone and told me he could get our bank a deposit of $5,500, and he told me what size of certificates, and to whom they should be issued, should be made out, and asked me to send them to him, and he would deliver them over to those parties, get the money, and deposit it to our credit in the Merchants' National Bank. * * * I wrote out three certificates of deposit, the two that you have recited here now, together with another one due to Mary E. Johnson, for $2,000. I wrote a letter of which Exhibit 28 is a carbon copy, dated June 3d. I dated those certificates a day later, as that would be the time they would reach Mr. Richardson and Mrs. Johnson, I presumed. * * * I wish to state that I had made out some certificates to those same parties under the same request, which were returned and canceled. * * * If my memory serves me right, there was either a mistake made and those were substituted for the others; but my memory is just a little hazy about just what the reason was, or how it occurred, but however, there was $5,500, in two certificates sent, two of them payable to Mary E. Johnson and one of them to James Richardson.' I called up Mr. Matters later, and asked him why we did not receive credit for those certificates. 'He said the deal wasn't closed yet, and the parties hadn't paid over the money.' 'I had several conversations with him in regard to those various certificates that were outstanding, and I can't say at any special time. I went up to Omaha and requested that he give me the certificates or give me the money. He said it was foolish to ask for the certificates, that they were in his vault, and that he would get that money for me.' He didn't get the money for me. The money was never paid for the Johnson and Richardson certificates. Said certificates were presented to the bank for payment. Exhibit 26 was paid by the bank when presented for payment. 'My recollection is that Mr. Miller paid that over the counter without my knowledge, and he didn't know * * * that no money had been received for them, is my recollection.'

"No one connected with the First National Bank, aside from myself, knew anything about the transactions between myself and Mr. Matters relating to the Johnson and Richardson certificates. * * * Exhibit 27 was paid when presented to the bank for payment. I immediately called up Mr. Matters in reference to the coming in of this certificate and that we would be compelled to pay it. These certificates, from the time they were issued, were outstanding obligations against the bank. These two certificates were presented on different dates, and I called up Mr. Matters over the phone in reference to both of the certificates, but I cannot repeat the conversation I had with him. As near as I can recollect 'I called him up over the phone and told him the James Richardson certificate, which he said he had control of and was in his vault, was presented for payment, and that we paid it.' He said, 'My God, has it come in?' and I said, 'We will have to charge your account with that right away, and that you must send money right away to cover it, because the account was already overdrawn.' I didn't charge the certificates to his account, because he didn't send anything to bring up his account. I had frequent conversations with him with reference to all three of those certificates. There is nothing more that I can say about these conversations, except that 'I pleaded with him to raise the money; * * * that he knew the penalties that would happen to both myself and him in the matter, and I believed his statements that he was doing all he could to raise the money.' I knew at that time, and I stated to him that I knew, those certificates were out of his hands. I had drawn the conclusion that Mr. Matters would not return the certificates

to me because he did not have possession of them. He didn't tell at any time how he came to turn over to either James Richardson or Mary E. Johnson the respective certificates, Exhibits 27 and 26."

On cross-examination Luebben testified as follows:

"The Mary E. Johnson and the Richardson certificates were issued under the same date, June 4, 1913. Only one certificate of Richardson and one of Mary E. Johnson are covered by the indictment. I don't know why the other certificate was not included, unless it be that they did not have possession of it. It is not true that I was instructed to charge both those certificates to Mr. Matters' account. Our bank books did show an open account with Thomas H. Matters. There had been an open account with Thomas H. Matters for a long time prior to said date, and said account continued until the bank closed. I did state to Mr. Matters over the telephone that when the certificates came in for payment and were paid 'that I would have to charge his account with it.' It is true that on June 2d, which was two days before these certificates were issued, Mr. Matters did send to me as president of the bank a check for $2,000, and which check was paid as appears on the face of it, June 8th."

The defendant was an attorney at law living at Omaha, Neb. The bank, as stated, was located at Sutton, in the same state. To sustain the claim made by defendant that these certificates of deposit were to be charged to his personal account in the bank, his counsel introduced in evidence what is known in the record as Exhibit 304, being a check dated June 2, 1913, for the sum of $2,000, drawn on the Omaha National Bank, and payable to the order of Luebben, president, and indorsed, "Paid Omaha National Bank, June 3, 1913." Luebben testified in reference to this check as follows:

"The check, Exhibit 304, under date of June 2, 1913, is a check which was handed to me by Homer W. Gray between May 28 and May 31, 1913. Mr. Gray had been absent on a trip to Tennessee with Mr. Matters. Mr. Gray was absent on a trip to Tennessee with Mr. Matters, and on his return he wired me to meet him at Fairmont. * * * He wired me to meet him on the train by going to Fairmont and taking the train back to Sutton on which he was returning, and while on the train he told me that he had given Mr. Matters a check for $2,000 on a deal which he was making with Mr. Matters in reference to a few acres of land just outside of Sutton, which was being traded for by Mr. Matters and the owner of the land, whose name I cannot now recall, for some Tennessee land, and that this deal would go through on my approval, or subject to my approval, and that he had a check from Mr. Matters for $2,000 to offset that check that he gave Mr. Matters. * * * He had given Matters a check for $2,000 on our bank, and the deal was subject to my approval. Inasmuch as Mr. Matters had not obtained that land, and the deal had not been consummated between Mr. Matters and the other party, I there and then stated that I did not approve of it, and he gave me the check for $2,000 that Mr. Matters had given him. This is the identical check that was made payable to me, and when we returned to Sutton I immediately placed this check in the bank, made a deposit slip to the credit of Homer W. Gray for $2,000 to meet the check Mr. Gray gave me on the First National Bank when it came in. This check was dated June 2d, but as a matter of fact it was dated ahead. The indorsements show that it was down in Kansas City on June 2d, and was paid in Omaha on June 3d."

[2] The evidence further showed without dispute that the defendant used the Richardson certificate to pay a personal debt owing by him to Richardson, and there was evidence from which the jury could find that the Johnson certificate was also used by him in a similar manner. The defendant did not testify. Beyond question the evi-

·dence recited sustains the verdicts on counts 16 and 17, as the facts would authorize the jury to find that the moneys of the bank were misapplied with intent to injure and defraud the bank. Much argument and citation of authority is contained in the brief of counsel for defendant, for the purpose of showing that certificates of deposit are not moneys, funds, or credits. It is sufficient to say in answer to this contention that the defendant is not charged with aiding and abetting Luebben in misapplying certificates of deposit, but moneys, funds, and credits by using certificates of deposit as means and ·instruments whereby the moneys of the bank were misapplied. Luebben testified that no money or other consideration was received by the bank for the Johnson and Richardson. certificates, and that they were paid by the bank when they were presented. If this does not present a case of misapplication of the moneys of the bank, it would be difficult to find one. The evidence being clearly sufficient to sustain the conviction under counts 16 and 17, the judgment below must be affirmed, so far as the sufficiency of the evidence is concerned. There may be other testimony in the record which counsel might claim was contradictory to the evidence of Luebben; but the question before us is as to whether there is substantial evidence to sustain the verdicts, and not whether the verdicts were right or wrong on conflicting evidence. We do not consider the other counts of the indictment· on the question of the sufficiency of the evidence, for it would avail the defendant nothing even if the evidence was insufficient under all the other counts; moreover, it would extend this opinion to an unwarrantable length to detail the evidence as to each count.

Counsel for the defendant next contends that the trial court erred in not specifically stating to the jury that the issuing of certificates of deposit was a crime distinct from misapplying moneys. Conceding this question to be raised on the record, it is sufficient to say that if there was anything made plain by the charge of the court it was this ·same distinction. The law was stated by the court, and the different counts in the indictment were classified, and just what each group of counts charged was stated. The confusion which counsel seems to think existed arose, in our opinion, from the fact that counsel construed the counts charging misapplication of moneys as charging misapplication of certificates of deposit. It is pointed out, also, that Luebben testified that he had no intent to defraud the bank when he issued the certificates of deposit, and we may add that the defendant no doubt, if he had testified, would have testified in the same way; but such testimony would not determine the matter. The jury had a right, and it was their duty, to consider the overwhelming weight of the acts performed by Luebben and the defendant, and thereby reach a just conclusion as to what the intent of the defendant and Luebben was. The question of intent was for the jury, and there was abundant evidence to sustain their finding that the misapplication of the moneys of the bank as charged in the sixteenth and seventeenth counts was for the purpose of injuring and defrauding

the bank. That was the legitimate and necessary result of the transaction.

Complaint is made by the twenty-fifth, twenty-sixth, twenty-seventh, and twenty-ninth assignments of error of certain language contained in the court's charge to the jury. It is claimed that the effect of the instructions was to have the jury believe all that Luebben and another witness, Honey, testified to, that was prejudicial to the defendant, and disregard the testimony wherein they testified that what they did was to aid, and not to defraud, the bank. We do not think the language of the court as contained in the charge is capable of any such construction as counsel seek to place upon it. Luebben's opinion of whether the defendant was guilty or not was irrelevant and immaterial, as the court stated. The court correctly charged that the jury were not obliged to take Luebben's word for what his (Luebben's) intent was, but that such testimony should be weighed by the jury, together with all the facts and circumstances in the case.

It is further claimed that the court erred in using the illustration set forth in assignment No. 27. It is urged that this illustration was equivalent to saying to the jury that the conduct of Mr. Luebben in issuing certificates of deposit for the simple purpose of borrowing money for the bank was as criminal as taking the $1,000 out of the bank vaults to speculate in mining stocks, or the issuing of certificates of deposit to speculate on the Board of Trade, and the inquiry is made by counsel: Why should not the court have confined its illustrations to the facts in this particular case? The court was endeavoring to make the charge against the defendant plain to the jury, and the court could not have illustrated the present case by simply restating the facts as they appeared. That would not be illustration. It was impossible to make a comparison with only one set of facts. It was necessary to have other facts to use as an illustration. Another fault in the criticism of counsel is that it assumes that the certificates of deposit were simply issued for the purpose of borrowing money. That was not the case of the prosecution. The evidence in regard to the sixteenth and seventeenth counts shows that these certificates were issued without consideration, used by the defendant to pay his own debts, and subsequently paid by the bank. How can it be assumed that such certificates were issued for the purpose of borrowing money? We see no fault in the illustration used by the court.

Assignments of error Nos. 41 and 42 complain of the refusal of the court to give certain instructions requested by the defendant. The language contained in these requests was substantially given by the court in its general charge, except the closing part of the language contained in assignment of error No. 42. The expression "even though the methods employed by Mr. Luebben and defendant, Thomas H. Matters, may have been either unusual or irregular," was improper to give to any jury, as being misleading and leaving the jury to determine without guidance as to what was unusual and irregular.

[3] Assignment of error No. 23 complains of the refusal of the trial court to admit in evidence in behalf of the defendant the record

and proceedings in the case of Frank R. McCormick, Receiver of the First National Bank of Sutton, Nebraska, v. Thomas H. Matters, and also certain correspondence between the receiver of the bank, the Comptroller of the Currency, and counsel for the respective parties. The judgment was dated October 26, 1916, three years after the transactions set forth in the indictment, and was the result of a compromise between the receiver and the defendant. The judgment was in favor of the defendant for $1,000. The purpose of offering these proceedings, as stated by counsel, was to show that the defendant was not indebted to the bank when it failed, or at the time of the judgment, and therefore defendant could not have intended to defraud the bank in transactions had three years before. The misconception of the law involved in this contention runs through counsel's whole brief. The contention is made in the brief that, as the defendant had a general account in the bank, he could not defraud the bank, if, when it failed, the bank owed him. This court in Norton v. United States, 205 Fed. 602, 123 C. C. A. 618, stated the elementary law upon the subject as follows:

"The criminal character of these transactions is to be determined from the evident facts and circumstances existing at the time of the respective transactions. The fact that subsequently the defendant may have made good to the American National Bank the amounts thereof, and that the bank did not lose by the transaction, does not change the unlawful character of the transactions when made."

The evidence offered was clearly inadmissible as irrelevant and immaterial regardless of many other valid objections.

Assignment of error No. 21 relates to the testimony of Koutsky, Ladd, and McElhenie. We do not think that this testimony was inadmissible; but, if it was, it did not relate to the sixteenth and seventeenth counts, and could not have prejudiced the defendant. The same may be said of assignments Nos. 5 and 6. Assignment of error No. 7 relates to the twentieth count, in which a verdict was directed in favor of the defendant. Assignments of error Nos. 8 and 9 are not among those specified in the brief as errors upon which the defendant would rely. Assignment of error No. 15 complains of the refusal of the court to receive in evidence a certain affidavit made by the witness Richardson. The witness subsequently testified to the contents of the affidavit, and the error, if any, was cured.

Assignment of error No. 16 relates to the refusal of the court to allow the witness George Honey to answer questions on cross-examination as follows:

"Q. Did you not say, at said time and place, to Miss Abbia M. Newberry, that if Mr. Thomas H. Matters would do what you, Mr. Honey, and Mr. Luebben, the former president of the First National Bank of Sutton, wanted him to do, you, meaning you, Mr. Honey and Mr. Luebben, would do what you could do and clear him of the charges against him, but Mr. Matters was not going to do what you asked him to do?"

"Q. And, Mr. Honey, one other question: Did you not, at the same time and place, say in the presence and hearing of Miss Abbia M. Newberry, that you, Mr. Honey, and Mr. Luebben, were both protected, and that Luebben was being held by the government at its expense?"

"Q. Mr. Honey, did you not say at said time and place, in the hearing of the persons named, that you, meaning yourself, Mr. Honey, and Mr. Luebben, were both being protected?"

Conceding that the witness did say what it is assumed he said in the first question, it would simply be a declaration that in the circumstances mentioned the witness would tell the truth. Moreover, Honey's evidence did not relate to counts 16 and 17. The other questions were immaterial. Assignments of error Nos. 18, 19, and 20 relate to the question of Luebben's authority to issue certificates of deposit, a question not involved in counts Nos. 16 and 17.

Finding no errors in the record in reference to counts 16 and 17, the judgments on those counts are affirmed.