### STOKES v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    March 9, 1920.)

#### No. 5255.

1. **Army and navy** &lt;&#9758;40—Indictment need not show means of effecting intent to cause insubordination.

   An indictment setting forth a publication by defendant with intent to cause insubordination, obstruct enlistment, and convey false reports interfering with the success of the United States forces, contrary to Espionage Act, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), need not aver facts to show by what means or on what persons the publication operated to produce the intended effect.

2. **Army and navy** &lt;&#9758;40—Publication held to disclose intent to cause insubordination and indictment is sufficient.

   An indictment setting forth a publication alleged to have been made with intent to hinder the prosecution of the war, contrary to the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), is sufficient if the terms of the publication are such that, in the light of the time and circumstances attending its publication, reasonable men could deduce therefrom an intention to cause insubordination; but the indictment is demurrable if the publication is not reasonably susceptible to such an inference.

───────────

&lt;&#9758;For other cases see same topic &amp; KEY-NUMBER in all Key-Numbered Digests &amp; Indexes

3. **Army and navy ⊜⇒40—Publication held sufficient to sustain indictment for violation of Espionage Act.**

A publication stating that the government was for the profiteers, and therefore could not also be for the people, and that the writer was for the people, is reasonably susceptible of the inference that it was intended to cause insubordination in the military forces of the government, etc., so that an indictment averring its publication with that intent is sufficient.

4. **Army and navy ⊜⇒40—In Espionage Act prosecution, other statements admissible to show intent in making particular statement.**

In a prosecution for publishing a statement with intent to cause insubordination, etc., contrary to the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), other similar statements by defendant within 20 days of the publication of the particular statement are admissible to illustrate or prove her intent in making the statement charged.

5. **Army and navy ⊜⇒40—In Espionage Act prosecution, statement that "government" was for profiteers held to refer to administration.**

A statement, published during the war, that the writer was not for the government, since a government for the profiteers could not be for the people, and that the government was for the profiteers, uses the word "government" as meaning the body of persons then conducting the war and the activities of the nation, not the system of polity or body of principles or rules by which the people are lawfully guided under the Constitution; and in the absence of extrinsic evidence to show that the latter meaning was intended, it was error to submit to the jury the question whether the charge that the government as established by the Constitution was for the profiteers was false.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Government.]

6. **Criminal law ⊜⇒823(4)—Submission of correct issue held not to cure submission of incorrect issue.**

Error in submitting to the jury whether a charge in a publication which used "government" as referring only to the administration was false, if government referred to the constitutional organization, was not cured by submitting also the question whether the charge that the administration was for profiteers was false, since it could not be determined from the general verdict on which finding it was based.

7. **Criminal law ⊜⇒1134(1)—Object of review is to assure fair trial.**

The object of the review by appellate courts of criminal trials is to determine whether they were fair and impartial, and if there is a serious doubt to make sure that accused has a fair and impartial trial, and this purpose guides the appellate courts in considering the errors assigned.

8. **Criminal law ⊜⇒1114(1)—Fairness of trial is determined from record and surrounding circumstances.**

The fairness of a criminal trial must be tested by the effect of the action of the court upon the jury, considering the circumstances and atmosphere surrounding the trial, as they are revealed by the record or influenced by facts known to all, and this is especially true in espionage cases.

9. **Criminal law ⊜⇒762(2)—Judge may comment on evidence.**

In a prosecution for a crime in the federal court the trial judge may, and it often is his duty to, comment upon the evidence and express his views upon it; but he must leave the ultimate decision to the jury, and must not color his charge so as unfairly to influence the verdict in favor of one of the parties.

10. **Army and navy ⊜⇒40—Charge held not fairly to present issues in prosecution under Espionage Act.**

In a prosecution for violation of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), a charge which dwelt at

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

length upon the statements attributed to defendant, the testimony for the United States, and collateral issues thereby raised, but merely referred to defendant's explanations of the statements, *held* unfair to defendant, especially when considered in the light of the patriotic feeling existing at the time and the natural prejudice created by the charge.

Carland, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Western District of Missouri.

Rose Pastor Stokes was convicted of violating the Espionage Act, and she brings error. Reversed and remanded, with instructions to grant a new trial.

Seymour Stedman, of Chicago, Ill. (Harry Sullivan and Isaac Edward Ferguson, of Chicago, Ill., on the brief), for plaintiff in error.

Francis M. Wilson, U. S. Atty., of Kansas City, Mo. (Elmer B. Silvers, Asst. U. S. Atty., of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. The plaintiff in error, Mrs. Stokes, the defendant below and so styled hereafter, was indicted and convicted of three violations of section 3 of the Espionage Act of June 15, 1917, 40 Stat. c. 30, p. 217, United States Compiled Statutes, Temporary Supplement 1917, § 10212c, and was sentenced to imprisonment in the penitentiary for 10 years for causing the publication of this letter in the Kansas City Star, a newspaper of large circulation in Kansas City and the surrounding country:

"To the Star: I see that it is, after all, necessary to send a statement for publication over my own signature, and I trust that you will give it space in your columns.

"A headline in this evening's issue of the Star reads: 'Mrs. Stokes for Government and Against War at the Same Time.' I am *not* for the government. In the interview that follows I am quoted as having said, 'I believe the Government of the United States should have the unqualified support of every citizen in its war aims.'

"I made no such statement, and I believe no such thing. No government which is *for* the profiteers can also be for the people, and I am *for* the people, while the government is for the profiteers.

"I expect my working class point of view to receive no sympathy from your paper, but I do expect that the traditional courtesy of publication by the newspapers of a signed statement of correction, which even our most Bourbon papers grant, will be extended to this statement by yours.

"Yours truly,                                          Rose Pastor Stokes."

The three violations, which were charged in three counts in the indictment, were that by causing the publication of this letter on March 20, 1918, while the United States was at war with the Imperial German government, she (1) willfully and knowingly attempted to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States; (2) willfully and knowingly obstructed the enlistment service of the United States, to the injury of that service, and to the injury of the United States; and (3) willfully and knowingly made and conveyed false reports and statements, with the intent to interfere with the operation and success

of the military and naval forces of the United States, and with the intent to promote the success of the enemies of the United States.

[1] To each count of this indictment the defendant demurred, her demurrer was overruled, and she assigns this ruling as error. Many objections to the indictment are made, all of which have been considered, but no error has been discovered in the rulings upon them. Those which counsel press with most zeal and confidence are that the indictment failed to state facts sufficient to constitute an offense, and that it contained no averment of any facts tending to inform the defendant in what way, by what means, or by its effect upon what persons, the publication of the letter either caused, or disclosed an attempt to cause, insubordination, etc., or obstructed the enlistment service, or conveyed false reports, with the intention to interfere with the operation of the military or naval forces, of the United States. But the Supreme Court and this court have repeatedly held that such averments are not indispensable to the validity or to the sufficiency of such charges in an indictment for statutory offenses of the nature here under consideration, so that this question is no longer debatable. Potter v. United States, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. Ed. 214; Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 250, 251, 63 L. Ed. 561; Doe v. United States, 253 Fed. 903, 904, 166 C. C. A. 3, 4; O'Hare v. United States, 253 Fed. 538, 539, 165 C. C. A. 208, 209.

[2, 3] And if the text of the letter, when considered in the light of the time and circumstances of its publication, was such that it was reasonably calculated to cause the effects charged, if it was such that intelligent and impartial men, in the exercise of a sound judgment, might reasonably deduce from it the conclusion that the publisher thereby intended to attempt to cause insubordination, etc., in the military or naval forces of the United States, or to obstruct its enlistment service, or to make false statements for the purpose of interfering with the operation or success of its military or naval forces, it was sufficient in its terms to sustain the indictment and to require the court below to send the case to a trial by the jury. If, on the other hand, upon its face, in the light of the time and circumstances of its publication, it was not reasonably susceptible to such an inference and judgment the demurrer should have been sustained. Repeated readings of the letter have led to the conclusion that it is of the former character, and that there was no error in overruling the demurrer.

[4] Complaint is made of the admission in evidence of testimony of certain statements and sayings which witnesses for the government testified the defendant made in certain addresses and interviews which she gave within about 20 days of the publication of the letter regarding the government and the profiteers, statements some of which were similar to that contained in the letter. But where, as in the case at bar, the intent of the defendant is material, her acts and statements similar to and made about the time of the statements or acts charged in the indictment are admissible to illustrate or prove her intent in making or doing the latter, and under this rule there was no error in the admission of such acts and statements for that purpose.

The denial of a motion at the close of the trial to instruct the jury

to return a verdict for the defendant is challenged, but the record satisfies that there was substantial evidence at the trial in support of the verdict against the defendant, and that the court below could not lawfully have withdrawn it from the jury.

[5] Reduced to its lowest terms, the statement in the letter upon which the indictment rests, is in substance:

I am not for the government. I made no statement that I believe the government of the United States should have the unqualified support of every citizen in its war aims. No government which is for the profiteers can be for the people, and I am for the people, while the government is for the profiteers.

The word "government" has two distinct and radically different meanings. It sometimes means the system of polity, or body of principles or rules by which the people subject to it are lawfully guided, as, in the case of the United States, the constitutional government of the United States of 1787. It sometimes means the governing body of persons in a nation, who are actually ruling over, guiding, and governing its people. Counsel for the United States contended throughout the trial that in the letter this word was used by the defendant in, and had, the former meaning, and, to prove that the statement in the letter that the government was for the profiteers was false, they introduced, among other evidence, the preamble to the Constitution of the United States. Counsel for the defendant insisted that the only meaning that could be lawfully attributed to this word in the letter, in the light of the time and circumstances of its preparation and publication, was the governing body of persons who at that time were actually ruling and guiding the people of the United States and conducting their governmental affairs, and they assign as error that portion of the charge to the jury upon this subject to the effect that the district attorney contended that the word "government," as used in the letter, referred to the government of the United States of America as established by our Constitution, as distinguished from the personality of those charged with its administration; that, of course, the Constitution of the United States, in its provisions for equal opportunity and its guaranties that every person should enjoy life, liberty, the pursuit of happiness, and the proceeds of his own industry, was not established for the benefit of war profiteers, nor for any other than the people generally; and that it was for the jury "to judge whether, if that be the meaning intended by this letter, the statement therein contained is true or false, and, if false, whether it was knowingly and willfully—that is, intentionally—made by the defendant, and for the purpose charged in the indictment."

This letter was written and published in March, 1918, at a time when this nation was, and for nearly a year had been, at war, when the people of the nation were straining every nerve to win that war, when the nation was gathering, training, and embarking its troops, when the minds of all its citizens were intent upon the war and its conduct, and not upon theories or forms of government. The imperative demands of the nation for immediate supplies, immediate transportation, immediate equipment and training of soldiers, for immediate action in every direction to throw the whole power of this republic into the war at once, before it should be too late, compelled the payment of high

prices for the necessary materials and services to prosecute the war, until the air was filled with rumors of extraordinary profits. The natural, ordinary, rational meaning of the word "government" in the defendant's letter, written and published at such a time and under such circumstances, and expressly mentioning the government in its war aims, was the body of persons then conducting the war and the activities of the nation. There is nothing in the letter itself, and a search of the record has disclosed no substantial evidence, to indicate that the writer used or intended to use it in any other sense, and the unavoidable conclusion is that it was error to submit to the jury the issue whether or not the defendant used or intended to use the word "government" in this letter in the sense of the constitutional government of the nation of 1787.

[6] If it be said that the court also submitted to the jury the question whether or not the defendant's statement that the government was for the profiteers was false, if she used and intended to use the word "government" in the sense of the personality of those charged with administration, the answer is that this did not extract the vice in the charge just considered, because that charge still permitted the jury to find the statement knowingly false, because the constitutional government of 1787 was not for the profiteers, without considering or determining whether or not it was false because those charged with the administration were for the profiteers and the verdict was general. A general verdict under an erroneous instruction cannot be upheld, when there were two theories submitted to the jury, on either of which they might have founded it, under one of which the instruction was harmless, while under the other it was error, because the generality of the verdict renders it impossible to determine upon which theory the jury based it. They may have founded it upon the very issue to which the erroneous instruction related, and that instruction may have controlled and produced their finding. State of Maryland v. Baldwin, 112 U. S. 490, 493, 5 Sup. Ct. 278, 28 L. Ed. 822; Lyon, Potter & Co. v. First Nat. Bank of Sioux City, 85 Fed. 120, 123, 29 C. C. A. 45, 48; Durant Mining Co. v. Percy Consolidated Mining Co., 93 Fed. 166, 169, 35 C. C. A. 252, 255; St. Louis Iron Mtn. & Southern Ry. Co. v. Needham, 63 Fed. 107, 114, 11 C. C. A. 56, 63, 25 L. R. A. 833; What Cheer Coal Co. v. Johnson, 56 Fed. 810, 813, 6 C. C. A. 148, 151; Cresswell Ranch & Cattle Co. v. Martindale, 63 Fed. 84, 90, 11 C. C. A. 33, 39.

The prejudicial effect of the submission to the jury of this false issue is emphasized by the fact that in discussing it in the charge the court told the jury that in the Constitution and in our institutions generally rights of property are defined—rights which, it said, the defendant in some of her expressions seemed to discredit; that the United States was referred to by her, in substance, at least, as a capitalistic form of government, which oppressed the poor and enriched one class at the expense of another; that, according to witnesses for the government, the present Bolshevist government of Russia was characterized by her as ideal; that there the workers, so called, were permitted arbitrarily to seize and divide up the land and wealth of the country, irrespective

of former ownership; that if such a system were to be applied to this country, not only the so-called rich, but the small landowner and the small merchant, would be called upon to divide their holdings on a per capita or similar basis; that such were the views of the defendant, as gathered by her expressions introduced in evidence on the part of the government; and that the jury would recall to what extent that was modified or denied by the defendant and her witnesses.

This portion of the charge was unfortunate, because (a) it was given to guide the jury in the determination of the false issues whether or not the constitutional government of the United States of 1787 was for the profiteers, and whether or not the defendant in her letter falsely stated that that government was for the profiteers; (b) because this portion of the charge stated at some length and forcibly alleged expressions and views of the defendant which were neither contained in nor similar to any views or expressions or intimations in the letter for the publication of which she was on trial—expressions and views testified to by some witnesses for the government, but denied or explained by the defendant and her witnesses; and (c) because the statements of the witnesses for the government regarding these expressions and views were so forcibly stated to the jury by the court, while the denials and explanations by the defendant and her witnesses concerning them were neither stated nor reviewed so as to bring them equally to the consideration of the jury after the arguments.

Counsel for the defendant complain that certain designated portions of the charge were highly argumentative in favor of the government, that much of the testimony for the government was reviewed and brought again forcibly to the minds of the jury by the court after the arguments of counsel, while the denials and explanations of the defendant and her witnesses received slight notice, and that when the entire charge is considered, and its natural influence on the jury at the time and under the circumstances of the trial, it had the effect to cause the trial to lack something of that fairness and impartiality to which the defendant was entitled.

[7] The real object of the review by appellate courts of trials in lower courts is to determine whether, according to recognized rules of procedure, they were fair and impartial, and if, in a criminal case, there is serious doubt upon that subject, to make sure by another trial that the accused has a trial that is fair and impartial. This is the purpose which guides appellate courts in their examination of assigned errors of law claimed to have unfairly influenced the result in the trial court. If the administration of justice is to be practical and substantial, and not merely theoretical, both trial and appellate courts must strive to ascertain the real substantial effect upon the jury of the action of the trial court.

[8] In the consideration of the question in any case, and especially in the case in hand, the time of, and the circumstances and atmosphere surrounding the trial, as they are revealed by the record, or as they are influenced by facts known of all men, and the real substantial effect upon the jury of the action of the trial court, are the decisive conditions by which the fairness of the trial must be tested.

[9] In the federal courts the trial judge may, and it is often his duty to, comment upon the evidence, and express his views upon it and upon the issues of fact, while he must leave the ultimate decision of these issues to the jury. All this the judge below clearly and forcibly did. It is, however, possible for a trial court to do this and yet unconsciously so to color its charge that the jury may, nevertheless, be unfairly influenced in favor of one of the parties to the action. Where the line must be drawn between comment upon the evidence of facts which is and that which is not permissible is determinable only by an examination of the language and a consideration of the circumstances of each particular case.

[10] The acts and intents charged to the defendant in the indictment were unpatriotic and repulsive to all loyal citizens. They were that she had intentionally endeavored in the manner stated in the indictment to obstruct the prosecution of the war which they were striving and sacrificing to carry on. The trial was in the midst of that war, when patriotic men were particularly impatient of every interference and of every attempt to interfere with or cripple the universal efforts to win that war, efforts in which not only the armed forces, but all the people of the nation shared in various ways. The charges, however, were not proof. The defendant was presumed to be innocent, and must be treated as innocent of them, until the fact was proved beyond a reasonable doubt that she was guilty. It is apparent that at such a time and under such circumstances the task of conducting a fair trial of one thus accused of intentionally attempting to obstruct the universal efforts of the people was unusually difficult, that extraordinary coolness, care, and impartiality were indispensable, to prevent the patriotic fervor of the jury from usurping the place of that considerate judgment which it was their duty to exercise.

The real issues in the case were narrow and definite. The publication of the letter was not denied. The main questions were whether or not the defendant caused it to be published with the evil intents and effect charged in the indictment, and whether or not it contained false statements. The government introduced testimony of witnesses that the defendant made many statements at other times which were claimed to have been similar to those in the letter. This testimony was introduced to illustrate and prove her intent in publishing that letter. Generally speaking, the making of these statements was either denied or explained by the defendant and her witnesses, and thus many side issues regarding these outside statements were raised. The court carefully instructed the jury that the defendant was not on trial for any of these statements, and that they must consider them, and the issues concerning them, only so far as they related to the question of her intent in writing and causing the publication of the letter. The charge of the court on these side issues, however, occupies many printed pages of the record, and it treated of many subjects. Between two or three pages of it are devoted to Great Britain, and to the contention that England is a democracy. Bolshevism and Internationalism were discussed. In the treatment of the main issues on trial, as well as of the side issues, the court sometimes stated in an impressive manner the

positions of the government, reviewed and summed up the evidence it had introduced in support thereof, but merely told the jury that they would remember and consider the denials or explanations of the defendant, or stated the evidence in her behalf with less particularity than was used in the statement of the evidence for the government, or omitted reference to it.

In its charge upon the issue whether or not, if the word "government" in the letter meant those by whom the government was administered, the statement that the government was for the profiteers was false, the court declared that the government had introduced the address of the President before Congress recommending, for the reasons therein set forth, a formal declaration recognizing the existence of a state of war, the resolution of Congress recognizing such a state, and the President's statements of the war aims of the nation in his address of January 8, 1918. It then stated that the resolution of Congress recited that the Imperial German government had committed repeated acts of war against the United States and that the war was thrust upon it, declared that the President based our entrance into the war on the highest grounds of humanity and unselfishness, and then said:

"From the evidence you are to determine what the defendant meant by this statement, and what, if anything, she intended to accomplish by it. The court will refer to her explanations a little later."

But the court probably forgot or overlooked this matter, and it failed to review or state the explanations of the defendant upon this subject. The charge contains in several places rich and inspiring expressions of patriotism and of the nobility of our aims in the war, which could hardly have failed to increase the commendable patriotic feeling that was already aflame in the heart of every juryman. This charge has been repeatedly read and thoughtfully considered. The entire record of the trial has been thoroughly examined. The task of the trial court was unusually delicate and onerous. The record demonstrates its conscientious endeavor to accomplish it. With the exceptions of the rulings which have been discussed, its declarations of the law in its charge were clear and correct, though sometimes blended with comments on and discussions of the facts, which made it somewhat difficult to separate the one from the other, and when the entire charge is considered in the light of the time and circumstances surrounding the trial, of the extended discussion in the charge of the many side issues which crept into the case, and of the other characteristics of the charge to which attention has been called, this court is unable to resist the conclusion that the patriotic zeal of the court below led it to place too heavy a burden upon the defendant in her endeavor to meet the evidence which the government produced against her, and that the cause of the administration of justice will be served by another trial of this case.

The judgment of the court below must accordingly be reversed, and the case must be remanded to the court below, with instructions to grant a new trial.

It is so ordered.

CARLAND, Circuit Judge (dissenting in part). As there was not sufficient evidence to warrant the jury in finding that the "government" was for the profiteers, whatever may have been the sense in which that term was used in the letter of defendant, I cannot see how she can complain of the submission of the question as to the meaning of the term to the jury.

I concur in what is said in criticism of the charge of the court, but I wish to be more specific. The court told the jury that the defendant was not on trial for her views in regard to governmental polity, or for being an Internationalist, but that such views or status should be considered by them in passing upon the intent of defendant in causing the publication of the letter set forth in the indictment. It appears from the record that the question of whether or not the letter was caused to be published by the defendant with the specific intents charged in the indictment was the only litigated question at the trial arising out of the indictment. Under the charge of the court, the fact that the defendant was an Internationalist might turn the scales against her on the question of intent. In other words, she might be convicted of the charge in the indictment because she was an Internationalist. It is immaterial whether the defendant's views as to Internationalism, whatever the term may mean, were wrong or not, as the court said to the jury, the defendant was not on trial for being an Internationalist. But if the jury could resolve the question of intent against the defendant because she was an Internationalist, I am unable to see why the charge of the court did not permit the jury to convict the defendant because she was an Internationalist. The court's view was that Internationalism is inconsistent with patriotism or love of country; but, be that as it may, we should be extremely careful not to punish a citizen for opinions, honestly held, not in violation of the law of the land.

I therefore concur in reversing the judgment below upon the ground of error in the charge.